## TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS ET AL. *v.* UNITED STATES ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

No. 115. Argued March 3, 4, 1924.—Decided October 13, 1924.

1. Certain railway companies, defendants in a suit successfully prosecuted by the United States under the Sherman Law, instituted contempt proceedings against their codefendants, not to vindicate the authority of the court, but to enforce rights which the petitioners claimed under the original decree and alleged that the respondents were violating. The United States did not join in the complaint or participate in the hearing in the District Court, but aligned itself with the petitioners on appeal. *Held,* that the con-

---

tempt proceedings were civil and remedial, and not criminal. P. 27.

2. The authority of a justice of this Court to allow appeals and grant supersedeas does not depend upon and is not limited by Rule 36, or any other rule of the Court. It includes appeals under the Expedition Act of February 11, 1903, c. 544, 32 Stat. 823, Rev. Stats., §§ 999, 1012. P. 28.

3. Upon an appeal by parties adjudged in contempt of a decree, where the question is whether the decree was broad enough to forbid the conduct complained of, appellees cannot be heard to claim that the decree should have been enlarged unless they took a cross appeal. *Id.*

4. In contempt proceedings for its enforcement, a decree will not. be expanded by implication or intendment beyond the meaning of its terms when read in the light of the issues and the purpose for which the suit was brought; and the facts found must constitute a plain violation of the decree so read. P. 29.

5. The making of railroad rates is a legislative and not a judicial function; and as a general rule the question of the reasonableness of rates of interstate carriers or of their divisions of joint rates will not be considered by the courts before application has been made to the Interstate Commerce Commission. P. 30.

6. The original decree in this case, (a suit by the United States against the Terminal Association, its subsidiaries and the proprietary railroads owning its stock, to prevent monopoly and restraint of trade in violation of the Sherman Act, *United States* v. *St. Louis Terminal,* 236 U. S. 194,) does not regulate rates, or prescribe divisions of joint rates or fix liability for transfer charges; and expressly provides that these matters may be dealt with by the Interstate Commerce Commission. P. 31.

7. Therefore, contempt proceedings will not lie to determine whether the " west side " proprietary railroads have paid more than their fair share of charges for services of the Terminal Association or to require the " east side " proprietary railroads to make payments on that account to the " west side " railroads; and refusal to pay such charges is not contempt of court. *Id.*

8. Assuming that the issuing by the Terminal Association of bills of lading and passes from points on its lines to distant points beyond them is not included in the business allowed under the original decree, proprietary railroads not shown to have been injured by it are not entitled to relief against it in contempt proceedings. P. 32.

Reversed.

APPEAL from an order of the District Court adjudging appellants guilty of contempt, committed by disobeying a decree.

*Mr. R. V. Fletcher* and *Mr. T. M. Pierce,* with whom *Mr. L. J. Hackney, Mr. Alex. P. Humphrey, Mr. Morison R. Waite, Mr. T. W. White, Mr. D. P. Williams* and *Mr. J. L. Howell* were on the briefs, for appellants.

*Mr. Joseph M. Bryson* and *Mr. Edward J. White,* with whom *Mr. William F. Evans, Mr. William F. Dickinson, Mr. Charles S. Burg* and *Mr. Edward T. Miller* were on the brief, for Missouri, Kansas & Texas Railway Company et al., appellees.

I. The order adjudging contempt and prescribing the means and method whereby it may be purged in no manner invades the jurisdiction of the Interstate Commerce Commission, but is the proper exercise by the court of its right and duty to protect its decree. Cf. *Fischer* v. *Hayes,* 6 Fed. 63; *Toledo Scale Co.* v. *Computing Scale Co.,* 261 U. S. 399. The District Court found that the Association was not acting in good faith as the impartial agent of the various railroad companies; that this condition was brought about by the domination of the Association by the east side lines, and its acquiescence therein; that by reason of such domination the east side lines compelled the west side lines to pay the Association's charges for supplying and operating facilities for interchange of certain traffic; and it held that the natural and proper punishment to be inflicted was a refund to the west side lines of the amounts they had been thus unlawfully required to pay. That procedure is strictly judicial, and is not only not a proper subject for consideration by the Interstate Commerce Commission but is a matter over which it has no jurisdiction.

Another finding deals with the action of the Association in issuing bills of lading for transportation of through

freight from points on its lines to points beyond its lines, and the use of passes by passengers between such points. It was impossible from the record to escape the conclusion that the Association was guilty of this practice after the decree the same as before.

Subdivision (a) of par. 3 of the order does not attempt to specify all the acts of the Association upon which was based the conclusion that it was not acting in good faith as the impartial agent of the various railroad companies. Subdivisions (b), (c) and (d) deal with particular instances reflecting such violation, but recourse can be had to the various opinions in this case, particularly the unanimous findings of the four circuit judges, for ascertaining other particulars evidencing such partiality.

The east side lines contend that the question to be determined by this Court is, whether there is anything in this proceeding or in law to warrant the court of first instance to determine what shall be the tariffs of the east side lines, or what shall be the division between the east side lines and the west side lines of rates on traffic passing from East St. Louis through St. Louis to points beyond. The District Court did not attempt to fix rates or divisions, nor did it assert that it had any authority to do so. It did, however, assert its lawful authority to forbid the east side lines, through their domination of the Association, from requiring the west side lines to pay more than their share of the expense of furnishing and operating the terminal facilities, the evidence showing that the west side lines had been forced to pay all the Association's charges for furnishing and operating facilities for the transfer of through freight both eastbound and westbound. The order did not specify any revision in tariffs; on the contrary, the opinion upon which the order is based in terms declares that the tariff questions are within the jurisdiction of the Interstate Commerce Commission. *United States* v. *Pacific & Arctic Co.*, 228 U. S. 87, distinguished.

II. The jurisdiction of the courts was not ousted by Transportation Act, 1920.

III. The west side lines had not only the right, but for self protection were under duty, to institute this contempt proceeding. One of the basic purposes of the Anti-Trust Act is to protect, not to destroy, rights of property. *Standard Oil Co.* v. *United States,* 221 U. S. 1, 78.

It is fundamental that a contempt proceeding where the relief sought is civil and remedial, is not a criminal proceeding in the sense that the criminal element dominates the case. A proceeding of this nature is between the original parties and is instituted and tried as a part of the main case. *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418. The penalty assessed against the contemnors may be ordered paid to another party to the suit for damages it may have suffered as a result of the contemptuous violation of the decree. *Morehouse* v. *Giant Powder Co.,* 206 Fed. 24; *Merchants' Stock & Grain Co.* v. *Board of Trade,* 201 Fed. 20; *Kreplik* v. *Couch Patents Co.,* 190 Fed. 565; *Union Tool Co.* v. *Wilson,* 259 U. S. 107; *In re North Bloomfield Gravel Min. Co.,* 27 Fed. 795; *Wells, Fargo & Co.* v. *Oregon Ry. & Nav. Co.,* 19 Fed. 23; *Secor* v. *Singleton,* 35 Fed. 378; *Matter of Christensen Engineering Co.,* 194 U. S. 458; *Cary Mfg. Co.* v. *Acme Flexible Clasp Co.,* 187 U. S. 427. Contempt proceedings may be instituted in the main cause by motion. *Phillips Co.* v. *Amalgamated Assn.,* 208 Fed. 335.

IV. The only question involved on this appeal is the jurisdiction of the District Court as a federal court. That jurisdiction being conceded, the judgment should be affirmed.

V. The effect of the operating agreement, the various opinions in this cause and the final decree, is to constitute the rails of the Association extensions of the rails of the proprietary companies.

*Mr. Solicitor General Beck* and *Mr. Blackburn Ester-line,* Assistant to the Solicitor General, for the United States, submitted.

Opposing counsel would seem to contend that paragraph 6 of the decree authorized them to bring about a situation more destructive and disastrous to the public interest and the terminal situation in St. Louis than ever existed prior to the filing of the original bill and the announcement of the opinions and decrees of this Court; that, in adjudging the Association a combination and conspiracy in restraint of trade and commerce under the Sherman Act, the Court has authorized them to engage in other activities which place them not only beyond the Sherman Act but to far greater advantage than if the original bill in equity had never been filed.

The argument that anything contained in Transportation Act, 1920, "abated this whole litigation" need not seriously be considered.

That the Transportation Act has not repealed the Sherman Act as applicable to combinations of railroad companies is obvious from the late case of *United States* v. *Southern Pacific Co.,* 259 U. S. 214, which was argued and decided more than two years after the Transportation Act was passed.

Paragraph 8 of § 407, is irrelevant, since it is not claimed that any order has been made by the Commission or applied for under § 407.

Should not the Association be dissolved *in toto* in pursuance of the opinions of this Court and the decrees entered on its mandates? On motion of the Government, or on its own motion, this Court has the power to require it. *Continental Ins. Co.* v. *United States,* 259 U. S. 156.

*Mr. John F. Lee* and *Mr. George M. Block,* by leave of Court, filed a brief as *amici curiae.*

MR. JUSTICE BUTLER delivered the opinion of the Court.

In November, 1905, the United States filed complaint in the Circuit, now District, Court for the Eastern District of Missouri against the Terminal Railroad Association of St. Louis, two bridge companies and a ferry company, subsidiaries of the Association, certain railroad companies which owned the capital stock of the Association, and the individuals who represented the shareholders on the Board of Directors of the Association. The names of the defendants are given in a note printed in the margin of the opinion in *United States* v. *St. Louis Terminal,* 224 U. S. 383, 390. The complaint alleged a combination in violation of the Sherman Anti-Trust Act, c. 647, 26 Stat. 209, and prayed a dissolution of the Association. Under the Expedition Act of February 11, 1903, c. 544, 32 Stat. 823, four Circuit Judges heard the case and entered a decree dismissing the complaint. On appeal to this court, there was a reversal. The case was remanded, and, March 2, 1914, a final decree was entered in the District Court in favor of the United States, in accordance with the mandate of this court. *United States* v. *St. Louis Terminal, supra,* 411. See also *Ex parte United States,* 226 U. S. 420. There was another appeal (236 U. S. 194) and, February 7, 1917, the District Court modified its decree in accordance with the direction of this court. The substance of the decree, as modified, so far as here material, is as follows:

" 1. The Terminal Railroad Association of St. Louis is an unlawful combination contrary to the Anti-Trust Act of July 2, 1890 (26 Stat. 209), when it and the various bridge and terminal companies composing it are operated as railroad transportation companies. The combination may, however, exist and continue as a lawful unification of terminal facilities upon abandoning all operating methods and charges as and for railroad transportation and con-

fining itself to the transaction of a terminal business such as supplying and operating facilities for the interchange of traffic between railroads and to assist in the collecting and distributing of traffic for the carrier companies, switching, storing and the like, and modifying its contracts as herein specified. An election having been made to continue the combination for terminal purposes, the defendants are therefore perpetually enjoined from in anywise managing or conducting the said Terminal Railroad Association or any of its constituent companies and from operating any of the properties belonging to it or its constituents otherwise than as terminal facilities for the railroad companies using the same, and from making charges otherwise than for and according to the nature of the services so lawfully authorized to be rendered. Provided, however, that the right of said Terminal Railroad Association as an accessory to its strictly terminal business to carry on transportation as to business exclusively originating on its lines, exclusively moving thereon, and exclusively intended for delivery on the same is hereby recognized, and nothing in this decree shall be construed to deny such rights."

Paragraph 2 of the decree directs a reorganization of the contracts between the defendant railroad companies and the Terminal Association by providing for the admission of any railroad to joint ownership and control of the combined terminal properties on terms of equality with the then proprietary companies, and for the use of the terminal facilities by any railroad not a joint owner upon such terms as will, in respect of use, character and cost of service, place every such railroad upon as nearly an equal plane as may be, with respect to expenses and charges, as that occupied by proprietary companies, and by eliminating from the existing agreement any provision which restricts any proprietary company to the use of the facilities of the Terminal Association.

Paragraph 3 abolishes the practice of billing to East St. Louis or other junction points and then rebilling traffic destined to St. Louis or points beyond.

Paragraph 4 abolishes any special or so-called arbitrary charge for the use of the terminal facilities in respect of traffic originating within the so-called 100-mile area that is not equally applied in respect of traffic originating outside of that area.

Paragraph 5 extends the effect of the decree to all railroad companies thereafter admitted to ownership or use of the terminal facilities.

Paragraph 6 is as follows: " Nothing in this decree shall be taken to affect in any wise or at any time the power of the Interstate Commerce Commission over the rates to be charged by the Terminal Railroad Association, or the mode of billing traffic passing over its lines, or the establishing of joint through rates or routes over its lines, or any other power conferred by law upon such commission."

The cause was reserved for such further orders and decrees as might be deemed necessary.

Certain defendant railroad companies, for convenience, are called the west side lines.[1]   Certain others are called the east side lines.[2]   The Chicago, Burlington & Quincy Railroad Company and the Wabash Railway Company each has a line which enters St. Louis from the east and a line which enters it from the west, but they are aligned with the east side lines on this appeal.   The capital stock

---

[1] Missouri, Kansas & Texas Railway Company; St. Louis-San Francisco Railway Company; Missouri Pacific Railroad Company, and the Chicago, Rock Island & Pacific Railway Company.

[2] Baltimore & Ohio Southwestern Railroad Company; Chicago & Alton Railroad Company; Cleveland, Cincinnati, Chicago & St. Louis Railway Company; Illinois Central Railroad Company; Louisville & Nashville Railroad Company; Southern Railway Company; Pittsburgh, Cincinnati, Chicago & St. Louis Railroad Company; St. Louis Southwestern Railway Company; Chicago, Burlington & Quincy Railroad Company, and the Wabash Railway Company.

of the Association is owned in equal amounts by all these companies, and they are called proprietary companies.

In August, 1920, the west side lines filed a petition and motion in the District Court to have the Terminal Association and its subsidiaries, and the east side lines and also their representatives on the Board of Directors of the Terminal Association adjudged guilty of contempt of court for violating the decree. The parties so complained of (appellants here) appeared and moved to dismiss the petition and also filed answer. An examiner was appointed, and, after the taking of evidence and a hearing, the court denied the motion to dismiss and entered its decree that the appellants "have continuously since the entry of said final order and decree, in contempt of this court, violated the terms thereof and are still violating its said terms—

"(a) In that defendants, the Terminal Railroad Association of St. Louis and its subsidiary companies are not acting in good faith as the impartial agents of the various proprietary lines.

"(b) In that the proprietary lines other than the petitioners, through the domination and control of the Board of Directors of defendant, the Terminal Railroad Association of St. Louis and its subsidiaries, compelled the petitioners to pay the Terminal Railroad Association its transfer charges for supplying and operating facilities for the interchange of both through east bound and through west bound freight traffic between the east side lines and the west side lines.

"(c) In that the defendants [the east side lines above named] . . . have not paid and are not now paying the reasonable transfer charges of defendant, the Terminal Railroad Association of St. Louis and its subsidiary companies on west bound through freight to the rails " of the petitioners and other defendants whose lines enter St. Louis from the West.

"(d) In that the said Terminal Railroad Association has been issuing bills of lading or receipts taking the place of bills of lading usable for the transportation of through freight from points on its lines to distant points beyond its lines, and has been issuing passes usable by passengers riding on passes or tickets from points on its lines to distant points beyond its lines."

And the decree commands that within 60 days the appellant companies cease violating the final decree in the respects above set forth, and that the east side lines "be and they are hereby required to pay within 60 days after the amount of same shall have been ascertained and determined for the use and benefit of said west side lines . . . the total amount of the transfer charges of defendant Terminal Railroad Association of St. Louis and its subsidiary companies paid by said west side lines on west bound through freight of said east side lines to the rails of said west side lines at St. Louis, Missouri; from the date of the entry of said final decree, to wit; March 2, 1914, to the date of this order. . . ." And the decree prescribed and directed how such total amount should be determined.

In these proceedings, the United States did not join in the complaint or participate in the hearing in the District Court, but has since appeared and is aligned with the appellees. The proceedings were instituted by the west side lines, not to vindicate the authority of the court, but to enforce rights claimed by them under the original decree. The controversy is between them and the east side lines as to whether the former or the latter shall bear transfer charges on west bound through freight. The nature of the proceedings is civil and remedial, not criminal. See *In re Nevitt,* 117 Fed. 448, 458; *Bessette* v. *W. B. Conkey Co.,* 194 U. S. 324; *Gompers* v. *Bucks Stove & Range Co.,* 221 U. S. 418, 441, *et seq.; Re Merchants' Stock Co., Petitioner,* 223 U. S. 639; *Morehouse* v. *Giant*

*Powder Co.,* 206 Fed. 24; *Merchants' Stock & Grain Co.* v. *Board of Trade,* 201 Fed. 20, 23.

This appeal was taken under the Expedition Act of February 11, 1903, c. 544, 32 Stat. 823. Appellants applied to the Circuit Judges for allowance of appeal and supersedeas. The appeal was allowed and supersedeas was granted on condition, among others, that, commencing 60 days after the entry of the decree, the east side lines pay to the Terminal Association and its subsidiaries charges for transferring westbound through freight from the east side lines to the rails of the west side lines. Appellants, being unwilling to accept that burden, applied to a justice of this court, who allowed their appeal and, upon the giving of appropriate security, granted supersedeas without requiring such payments to be made pending the appeal. Appellees assert that the allowance of the appeal was under Rule 36 which provides that an appeal from a District Court may be allowed and supersedeas granted by a justice of this court, in cases provided for in §§ 238 and 252 of the Judicial Code; that thereby the case was brought under § 238, and that the question of jurisdiction is all that may be considered on this appeal. The contention is without merit. The authority of a justice of this court to allow appeals and grant supersedeas does not depend upon and is not limited by Rule 36 or any other rule of this court. See *Hudson* v. *Parker,* 156 U. S. 277, 284. The Expedition Act gives the right of appeal in this case, and the appeal was properly allowed by a justice of this court. Revised Statutes, §§ 999, 1012. *Sage* v. *Railroad Co.,* 96 U. S. 712, 715; *Brown* v. *McConnell,* 124 U. S. 489.

The original decree was not enlarged by the decree appealed from. And, as there is no cross appeal, no question is presented as to the right of the appellees to have it amended so as to impose any additional condition on the continued existence of the combination as unified ter-

minal facilities. *Peoria Ry. Co.* v. *United States,* 263 U.
S. 528, 536. The question whether the east side lines are
bound to pay transfer charges on west bound through
freight depends upon the proper construction and applica-
tion of the original decree.

In contempt proceedings for its enforcement, a decree
will not be expanded by implication or intendment beyond
the meaning of its terms when read in the light of the
issues and the purpose for which the suit was brought; and
the facts found must constitute a plain violation of the
decree so read. See *United States* v. *Atchison, T. & S. F.
Ry. Co.,* 142 Fed. 176, 182, 183; *In re Cary,* 10 Fed. 622,
625, 626; *Ophir Creek Water Co.* v. *Ophir Hill Mining
Co.,* 61 Utah, 551, 556; *Louisville & Nashville R. R. Co.* v.
*Miller,* 112 Ky. 464, 472; *Wisconsin Central R. R. Co.* v.
*Smith,* 52 Wis. 140, 143; *Sullivan* v. *Jones & Laughlin
Steel Co.,* 222 Pa. St. 72, 85, 86; *Weston* v. *Lumber Co.,*
158 N. C. 270, 273; *Deming* v. *Bradstreet,* 85 Conn. 650,
658; *Porous Plaster Co.* v. *Seabury,* 1 N. Y. S. 134. The
statement of the decree appealed from [subdivision (a)]
that the Terminal Association and its subsidiaries are not
acting in good faith as the impartial agents of the various
proprietary lines is too general and vague, when con-
sidered by itself, to constitute a specification of facts
amounting to contempt of court. The meaning and appli-
cation of this general language is to be limited by the spec-
ification of details which follow it in (b) and (c) of the
same section. *Atkins* v. *Disintegrating Co.,* 18 Wall. 272,
302; *Bock* v. *Perkins,* 139 U. S. 628, 634, 635; *Brunson* v.
*Carter Oil Co.,* 259 Fed. 656, 664.

The original decree does not require the east side lines
to pay the charges for transferring west bound through
freight. No provision so directs, and there is nothing in
the circumstances to indicate that the court intended to
prescribe the amount of such transfer charges or to fix
liability therefor. *United States* v. *St. Louis Terminal,*

236 U. S. 194, 204. The suit was brought by the United States to prevent restraint of trade and monopoly in violation of the Sherman Anti-Trust Act. It did not relate to the transfer charges or division of joint rates. All the proprietary companies were defendants. The pleadings presented no issue between the west side lines and the east side lines; and no controversy between them was determined by the decree.

The practice of "breaking" the rates on west bound through freight at the east bank of the Mississippi River in East St. Louis has prevailed since 1877. That is, joint rates on freight moving from the east through St. Louis to points in the west have been considered as made up of an amount to cover the haul to the east bank of the river and an amount to cover the haul beyond that point. The former has been divided among the carriers hauling to the east bank of the river; the balance among those hauling from that point,—including the Terminal Association and its subsidiaries making the transfer from the lines on the east to the lines on the west side of the river. It has also been the practice at this crossing to "break" the joint rates on east bound through freight at the same place. All rates have been set forth by tariffs; and the divisions of the charges among the participating carriers have been shown by their division sheets filed with the Interstate Commerce Commission. The practice has been the same on all competing routes crossing the river at points between East St. Louis and Dubuque.

The making of rates is a legislative and not a judicial function. *Keller* v. *Potomac Electric Co.,* 261 U. S. 428, 440; *Ohio Valley Co.* v. *Ben Avon Borough,* 253 U. S. 287, 289; *Louisville & Nashville R. R. Co.* v. *Garrett,* 231 U. S. 298, 305; *Interstate Commerce Commission* v. *Humboldt S. S. Co.,* 224 U. S. 474, 483; *Prentis* v. *Atlantic Coast Line Co.,* 211 U. S. 210, 226. The division of joint rates is also legislative in character. The Interstate

Commerce Commission is authorized to establish through routes and joint rates and to prescribe conditions upon which such routes shall be operated, and to fix divisions of such rates among carriers. § 15 (1), (3), (6), Interstate Commerce Act, § 418, c. 91, 41 Stat. 485, 486. It is well settled as a general rule that the question of the reasonableness of rates or of divisions of joint rates will not be considered by the courts before application has been made to the Commission. *Texas & Pacific Ry.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426, 440; *Robinson* v. *Baltimore & Ohio R. R.,* 222 U. S. 506; *Mitchell Coal Co.* v. *Pennsylvania R. R. Co.,* 230 U. S. 247, 254–261; *Skinner & Eddy Corporation* v. *United States,* 249 U. S. 557, 562; *United States* v. *Abilene & Southern Ry. Co.,* 265 U. S. 274. The Terminal Association and its subsidiaries are common carriers by railroad and, like the proprietary companies, are subject to regulation by the Commission. The original decree does not purport to regulate rates or prescribe divisions of joint rates, or fix liability for such transfer charges. On the other hand, it expressly provides that it shall not affect in any wise or at any time the power of the Commission over charges to be made by the Terminal Association or its subsidiaries, or any power conferred by law upon the Commission. In the exercise of its powers under existing law, the Commission is untrammeled by the decree and may make and regulate rates on through freight and the divisions thereof. As the original decree does not prescribe charges or fix divisions of joint rates, contempt proceedings will not lie to determine whether the west side lines have paid more than their fair share of the charges for the services rendered by the Terminal Association, or to require the east side lines to make the payments specified in the decree appealed from. The refusal or failure of the east side lines to pay the charges in controversy or any other transfer charges is not contempt of court.

The issuing of the bills of lading, receipts and passes referred to in the decree [subdivision (d)] appealed from is not expressly forbidden by the original decree.  But assuming in favor of the west side lines that such issuing is not included in the terminal business which the combination is permitted to do, it is not shown that any injury to them has resulted therefrom, or that they are entitled to any relief.  *Gompers* v. *Bucks Stove & Range Co., supra,* 451.

*Decree reversed.*