## ALTON R. CO. v. UNITED STATES et al.
### No. 11347.

District Court, N. D. Illinois, E. D.
April 7, 1932.

Silas H. Strawn and Frank H. Towner, both of Chicago, Ill., for petitioner.

Elmer B. Collins, of Washington, D. C., for the United States.

J. Stanley Payne, of Washington, D. C., for Interstate Commerce Commission.

J. L. Aber and L. P. Day, both of Chicago, Ill., for defendant Railroads.

Oscar E. Carlstrom, Atty. Gen., for the State of Illinois.

Before EVANS, Circuit Judge, and LINDLEY and WOODWARD, District Judges.

LINDLEY, District Judge.

On December 7, 1931, the Interstate Commerce Commission entered an order dismissing the complaint of petitioner in so far as it attacked the legality of divisions of certain joint reshipping freight rates. This order was based upon the finding that "the present divisions of joint reshipping or proportional rates on grain, grain products and grain by-products, in carloads, from Peoria and Pekin over the lines of complainant to Chicago, Joliet or Dwight, destined to points in eastern trunk line and New England territories east of Buffalo, are not unjust, unreasonable or otherwise unlawful, as alleged by complainants."

Petitioner now sues to enjoin and suspend said order of dismissal and to restrain defendant railroad companies from making divisions such as those complained of.

For many years petitioner and defendant railroad companies have maintained agreed joint rates upon grain and its products and by-products from Peoria and Pekin, Ill., to points east of Buffalo. These rates have been duly published and filed with the Commission as required by law. The greater part of the traffic covered by them originates in the territory southwest, west, and northwest of Peoria, and, after shipment into Peoria, remains there in storage or in course of manufacture into products and by-products before being forwarded to the Coast. For such traffic the applicable rates, if the reshipments are within twelve months of arrival, are called "Reshipping" or "proportional" rates, and vary in amount, depending upon the section of territory where the shipment to Peoria originates. If the goods are not reshipped within twelve months, the rates applicable are called "local" rates, although joint in character.

Petitioner hauls the loadings from Peoria to one of its gateways, Dwight, Joliet, or Chicago, and there delivers them to its connecting eastern railroads for further transportation. On July 1, 1928 the Eastern lines, over the objection of petitioner's predecessors, established new divisions of the aforesaid joint reshipping rates, reducing petitioner's proportion to a maximum of two cents per hundred pounds in certain instances and to as little as nothing in others. The defendant Eastern lines were in a position to enforce this division because they made collections of the joint through rates and could deduct such proportions as they insisted upon. Petitioner complained to the Commission asserting the unlawfulness of the divisions aforesaid and asking that body to fix proper divisions. The final order of the Commission now complained of held the division of the local joint rates unreasonable, but dismissed the complaint of petitioner as to the through proportional reshipping rates. It is to the latter part of the order that petitioner objects, upon the ground that the present divisions are confiscatory.

The division of freight rates, in the absence of constitutional legislation affecting or regulating same, is left as a matter of contract to the carriers, but when, in pursuance of constitutional power so to do, Congress creates a body such as the Interstate Commerce Commission, and grants to it power to regulate commerce and fix divisions of joint rates, it removes the subject-matter from the carriers' jurisdiction, and places it within the custody of a body representative of the legislative branch of the government. The power to fix rates or to make divisions of rates is lodged in the legislative branch of the government. Terminal R. R. Ass'n v. U. S., 266 U. S. 17, 30, 31, 45 S. Ct. 5, 69 L. Ed. 150; Keller v. Potomac Elec. Co., 261 U. S. 428, 440, 43 S. Ct. 445, 67 L. Ed. 731; Ohio Valley Co. v.

Ben Avon Borough, 253 U. S. 287, 289, 40 S. Ct. 527, 64 L. Ed. 908; Louisville & N. R. R. Co. v. Garrett, 231 U. S. 298, 305, 34 S. Ct. 48, 58 L. Ed. 229; Interstate Commerce Comm. v. U. S. ex rel. Humbolt S. S. Co., 224 U. S. 474, 483, 32 S. Ct. 556, 56 L. Ed. 849; Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 226, 29 S. Ct. 67, 53 L. Ed. 150.

█ While the Interstate Commerce Act (section 15 [49 USCA § 15]) gives the Commission jurisdiction, upon complaint of an aggrieved party or upon its own motion, to interfere with divisions being made, there is no requirement in the act, in the absence of an order concerning same, that such divisions must be filed with the Commission, or that anything shall be done to make such divisions official acts of the Commission or that official indorsement of same be made. Joint rates must be filed with the Commission, and, where so filed and approved, they become matters controlled by official edicts of that body. But divisions, in the absence of relieving orders, are not so filed, but are left to and fixed by the carriers themselves. Clearly there must be some administrative order upon divisions, in pursuance of the Commission's legislative power, before it can be said that legislation has occurred.

█ In the present case petitioner, dissatisfied with divisions forced upon it by its joint carriers, which afford it only an alleged confiscatory return or none at all, and finding itself unable to agree with its joint associates as to any modified divisions of joint rates, made its appeal that the Commission exercise its legislative power, find the existing divisions unfair, and fix fair ones. After an examination of the facts, the Commission found that the divisions were not unfair, and dismissed the complaint. It entered no other order; it merely declined to legislate. It did not order the Alton or its connecting carriers to abide by the previously maintained divisions; it did not direct the future maintenance of the existing divisions; its action was equivalent to saying: "We do not find the situation such that we should fix divisions, that is, we find no reason to exercise our legislative administrative power."

We are now asked to enjoin this order of dismissal. Petitioner appeals to us for a decree against a legislative body enjoining its refusal to enact legislation. Such relief is beyond judicial discretion. The judiciary may not by mandatory injunction force a legislative or administrative branch of the government to exercise its legislative powers. Refusal to legislate to prevent confiscation is subject-matter over which the judiciary has no jurisdiction.

Suppose the act creating and granting jurisdiction to the Interstate Commerce Commission had never been enacted, and consequently the power so to legislate as to fix divisions of rates remained solely in Congress. Then suppose, in the absence of such legislation, petitioner had applied to Congress for legislation fixing new divisions upon the plea that those heretofore enforced by its associate joint carriers are confiscatory. Could it be successfully contended that the judiciary might by any decree interfere with the action of Congress in failing to legislate? It is obvious that the courts would have no such power. "Litigation cannot arise until the moment of legislation is past." Prentis v. Atlantic C. L. Co., 211 U. S. 210, at page 227, 29 S. Ct. 67, 70, 53 L. Ed. 150. A corollary to this sentence from Mr. Justice Holmes is that litigation is powerless to compel legislation.

This case cannot be distinguished from the decision in Procter & Gamble Co. v. United States, 225 U. S. 282, 32 S. Ct. 761, 765, 56 L. Ed. 1091. There, a rule had been put in force by the railroad companies and approved by the Commission requiring the collection of demurrage charges upon privately owned tank cars left on side tracks, even though the side tracks belonged to the parties owning the cars. Procter & Gamble, owners of such cars, filed a complaint with the Commission, charging that the rule was unjust and would permit the taking of their property without compensation and without due process of law. The Commission found that the rule was not an unjust one, refused to interfere, and dismissed the complaint.

Chief Justice White commented at length upon the character of the order entered. He concluded that the words of the Judiciary Act giving courts jurisdiction of cases brought "to enjoin, set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission," could mean to apply only to orders granting affirmative relief, and that they give to the court "the right to take cognizance, when properly made, of complaints concerning the legality of orders rendered by the Commission, and confer power to relieve parties in whole or in part from the duty of obedience to orders which are found to be illegal." He further said:

"The statute, therefore, necessarily, while it created new rights in favor of shippers, in order to make those rights fruitful as to the subjects with which the statute dealt, coming within the scope of the administrative unity which we have mentioned, primarily made the judgment of the administrative body to whom the statute confided the enforcement of the act in the respects stated a prerequisite to a resort to the courts. In other words, as to the subjects stated, the act did not give to the courts power to hear the complaint of a party concerning a violation of the act, but only conferred power to give effect to such complaints when, by previous submission to the Commission, they had been sanctioned by a command of that body. * * *

"By a long line of decisions, whereby applications to enforce orders of the Commission were considered and disposed of, or where requests to restrain the enforcement of such orders were passed upon, it appears by the reasoning indulged in that it was never considered that there was power in the courts as an original question, without previous affirmative action by the Commission, to deal with what might be termed in a broad sense the administrative features of the act to regulate commerce by determining as an original question that there had been a compliance or noncompliance with the provisions of the act. The subject is illustrated and made clear by the rulings in Washington ex rel. Oregon R. & Nav. Co. v. Fairchild, 224 U. S. 510, 56 L. Ed. 863, 32 S. Ct. 535; Robinson v. Baltimore & O. R. R. Co., 222 U. S. 506, 56 L. Ed. 288, 32 S. Ct. 114; Southern R. Co. v. Reid, 222 U. S. 424, 56 L. Ed. 257, 32 S. Ct. 140, and Texas & P. R. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 51 L. Ed. 553, 27 S. Ct. 350, 9 Ann. Cas. 1075. The latter case especially will serve to point out that where the power of original action by a court, without previous action of the Commission, was insisted upon, it was based upon the conception that the particular subject-matter as to which such power was asserted was, by the express terms of the act to regulate commerce, not embraced within the subjects primarily confided by the act exclusively to the administrative authority of the Commission."

Other cases where the court has held that similar negative orders entered by the Commission cannot be successfully attacked in judicial actions are United States v. Los Angeles R. R. Co., 273 U. S. 299, 47 S. Ct. 413, 71 L. Ed. 651; Lehigh Valley R. R. Co. v. U. S., 243 U. S. 412, 37 S. Ct. 397, 61 L. Ed. 819; Manufacturers' Ry. Co. v. U. S., 246 U. S. 482, 483, 38 S. Ct. 383, 390, 62 L. Ed. 831. The language of the opinion in the latter mentioned case is directly applicable. There the court. said:

"It hardly can have escaped attention that the real complaint of appellants respecting the order now under consideration is directed not to what the order requires to be done, but to what it does not require. It granted a part of the relief for which appellants had applied to the Commission. Recognizing the Railway as a common carrier to which allowances and divisions might be accorded by the trunk lines, and that through routes were in operation between the Railway and those lines, it fixed the maximum joint rates, and went no further for the present. The real ground for resorting to the courts in this case is the failure to fix divisions. * * * It is settled that this [jurisdiction] does not permit the court to exercise administrative authority where the Commission has failed or refused to exercise it, or to annul orders of the Commission not amounting to an affirmative exercise of its powers."

See, also, Terminal R. R. Ass'n v. U. S., 266 U. S. 17, 45 S. Ct. 5, 69 L. Ed. 150; New England Divisions Case, 261 U. S. 184, 43 S. Ct. 270, 67 L. Ed. 605; United States v. Abilene & S. Ry. Co., 265 U. S. 274, 44 S. Ct. 565, 68 L. Ed. 1016; Beaumont, etc., Ry. v. U. S., 282 U. S. 74, 51 S. Ct. 1, 75 L. Ed. 221; Piedmont & Northern Ry. v. U. S., 280 U. S. 469, 50 S. Ct. 192, 74 L. Ed. 551; Standard Oil Co. v. U. S., 283 U. S. 235, 51 S. Ct. 429, 430, 75 L. Ed. 999. In the last mentioned case the court said: "Necessarily the district court was without jurisdiction under the settled construction of that provision by which the authority of the court is limited to the review of affirmative orders, with 'power to relieve parties in whole or in part from the duty of obedience to orders which are found to be illegal.'"

Here there was no duty of obedience to any order from which the court might relieve the petitioner.

While the Commission made no order in respect to these divisions, it did make a finding that they had not been shown to be unjust or unlawful. But that finding is not subject-matter for an injunction. So in United States v. Atlanta, B. & C. R. Co.,

282 U. S. 522, 51 S. Ct. 237, 75 L. Ed. 513, it was held that a finding in a Commission report is not an order of the Commission and jurisdiction of the suit to annul it is not conferred upon the statutory court by the Urgent Deficiencies Act (28 USCA § 41 (28).

In the Inter-Mountain Rate Case, 234 U. S. 476, 34 S. Ct. 986, 58 L. Ed. 1408, relied upon by petitioner, the complaint was against existing rates which had been made official by being filed with, and approved by, the Commission. The order, while negative in form, had the legal effect of fixing certain rates which petitioner in its suit in court contended were illegal. Hence the purpose of the suit was to set aside as illegal a completed legislative or administrative act. In United States v. Merchants', etc., Association, 242 U. S. 178, 37 S. Ct. 24, 61 L. Ed. 233, the legal situation was the same as in the case last commented upon. The effect of the order of the Commission was officially to approve and fix certain rates which petitioner attacks as unjust.

In United States v. New River Co., 265 U. S. 533, 44 S. Ct. 610, 613, 68 L. Ed. 1165, the court stated that the order complained of permitted and authorized the carrier to adopt a certain rule, and said that "the effect of the order is to grant relief sought by the coal mines." In the instant case, the order does not authorize or permit the divisions complained of; it is merely a refusal upon the part of the Commission to interfere; and, as the court said in the last-cited case, "the taking of jurisdiction in such cases would involve determination by the courts whether relief denied by the Commission, in the exercise of its powers, should be granted." In United States v. Los Angeles Railroad Co., 273 U. S. 299, 47 S. Ct. 413, 71 L. Ed. 651, the court pointed out that the order was negative because it did not demand the carrier to do or refrain from doing anything, because it did not grant or withhold any authority, privilege, or license, and because it did not change the carriers' future or existing situation or obligations. The order presently complained of likewise fails to command the carriers to do or refrain from doing anything; does not grant or withhold any authority, privilege, or does not abridge any power or facility.

In view of the foregoing, though petitioner's situation may seem to it harsh, we are unable to find any basis for jurisdiction in this court. To exercise jurisdiction would amount to the determination of questions which the Commission has refused to consider in its legislative and administrative capacity, and which we are therefore not free to consider.

The bill will be dismissed for want of jurisdiction.