**BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN, Plaintiff,**

**v.**

**SOUTHERN RAILWAY COMPANY et al., Defendants.**

**Civ. A. No. 2881-62.**

United States District Court
District of Columbia.
Nov. 6, 1963.

Schoene & Kramer, Washington, D. C., Heiss, Day & Bennett, Cleveland, Ohio, for plaintiff.

Hamilton & Hamilton, Washington, D. C., Proskauer Rose Goetz & Mendelsohn, New York City, for defendants.

LEONARD P. WALSH, District Judge.

This matter comes before the court on plaintiff's motion for issuance of an order to show cause and for judgment of contempt against the defendant railroad. The motion was heard on September 12 and 13, 1963, and briefs were submitted subsequent thereto.

The plaintiff asserts that the Railroad had failed to comply with the Order of this Court of May 29, 1963. That Order required the Southern Railway to "interpret Section 4 of the Diesel Agreement as it was interpreted prior to July of 1959". The Order further required:

"* * * that the defendants herein shall maintain the *status quo* with respect to their operation of locomotives and the use of firemen thereon in the application of Section 4 of the Diesel Agreement, by mak-ing available sufficient firemen to comply with said Section 4, and by following the same procedures employed by defendants and maintaining the same working conditions as were maintained by the defendants in the employment and application of said Section 4 during the period 1950 to 1959; * * *."

The Order granted the defendants thirty days, or until June 28, 1963, in which to comply; and, further stated that the Order would remain in effect until the National Railroad Adjustment Board made a determination of the issues then before it.

The Order was entered following a Memorandum Opinion filed on May 14, 1963. See Brotherhood of Locomotive Firemen and Enginemen v. Southern Railway Co., et al., D.C., 217 F.Supp. 58.

The Brotherhood asserts that the railroad has violated the Court's order in that locomotives have operated without "the use of firemen thereon", and that the defendants have failed to follow the same procedures and to maintain "the same working conditions as were maintained by the defendants * * * during the period 1950 to 1959."

Plaintiff alleges that the contempt arises from two separate actions by the defendants: first, the defendants operated 46 locomotives without the services of firemen between June 28 and September 1, 1963; and second, defendants have hired 223 "aged" men as firemen without regard to their ability or qualifications, and instructed these new men that their only duty consisted of occupying the firemen's seat on the locomotive.

Defendants concede that 46 (in fact, 47) trains did operate without firemen; but that during this period, Southern operated more than 42,000 trains and the 46 represents one-tenth of one per cent, which, counsel asserts, is a good faith effort to comply with the order.

The defendants further concede that the men hired as firemen since May 29, 1963, are over sixty, and were instructed that they had no duties to perform other

than to occupy the firemen's seat on the locomotive; that this was done, not to flaunt the mandate of this court, but in order to benefit from rapid attrition in the event that the final disposition of these issues will permit the carrier to operate diesel locomotives without firemen.

The Brotherhood alleges that the conduct of the Railroad amounts to civil and criminal contempt. In the leading case of United States v. United Mine Workers of America, 330 U.S. 258, at page 302, 67 S.Ct. 677 at pages 700–701, 91 L.Ed. 884 (1947), the Court stated:

"Sentences for criminal contempt are punitive in their nature and are imposed for the purpose of vindicating the authority of the court. Gompers v. Buck's Stove & Range Co., supra [221 U.S. 418] at 441 [31 S.Ct. 492, at 498, 55 L.Ed. 797]. The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter. One who defies the public authority and willfully refuses his obedience, does so at his peril. In imposing a fine for criminal contempt, the trial judge may properly take into consideration the extent of the willful and deliberate defiance of the court's order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future. Because of the nature of these standards, great reliance must be placed upon the discretion of the trial judge."

Continuing 330 U.S. at page 303, 67 S.Ct. at page 701, 91 L.Ed. 884, the Court stated:

"* * * Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained."

This Court, then, is faced with two questions:

(1) Did the defendants' conduct, in operating 47 trains without the presence of firemen during the period of June 28 to September 1, 1963, and in actually employing 223 firemen over the age of sixty with the instruction that their sole duty was to occupy the fireman's seat, amount to "willful and deliberate defiance of the court's order"? And,

(2) Does this conduct require this court to impose sanctions to force future compliance with the Order of May 29, 1963, or to compensate the plaintiff Brotherhood?

It is the opinion of this court that both questions must be answered in the negative.

The primary allegation of contempt is the contention by the Brotherhood that the Southern has contravened the Order of this Court by hiring 223 "aged" men without regard to physical or educational standards, and by directing that these new hires are to perform none of the duties normally performed by firemen.

On July 1, 1963, Southern changed its operating rules to eliminate the duties formerly performed by firemen. Plaintiff contends that this action was taken in direct contravention of our order. However, it is conceded that these rules have not been the subject of collective bargaining between the parties; and, further, that the rules have been changed on prior occasions without consultation with the Brotherhood.

Our Order of May 29 refers to "working conditions", and specifically, to Section 4 of the Diesel Agreement which, under its present interpretation, requires that a fireman be employed on all locomotives. This order was entered pursuant to the plaintiff's successful contention that the carrier was not complying with this working condition which had been the subject of collective bargaining. The effect of our Order required that this condition be maintained,

as required by Section 6 of the Railway Labor Act, 45 U.S.C. § 156, until the matter was settled by the National Railroad Adjustment Board.

There was no dispute at that time as to operating rules which were, and remain, the sole responsibility of management. To now expand that order to include rules as well as conditions would be an unwarranted interference with the functions of management. Further, in Terminal R. R. Assn. of St. Louis v. United States, 266 U.S. 17, 29, 45 S.Ct. 5, 8, 69 L.Ed. 150 (1924), the Supreme Court stated that

"In contempt proceedings for its enforcement, a decree will not be expanded by implication or intendment beyond the meaning of its terms when read in the light of the issues and the purpose for which the suit was brought; and the facts found must constitute a plain violation of the decree so read."

The defendant has offered an explanation for its change in the operating rules to show that the change was not made for the purpose of avoiding or flaunting the order of the court. The carriers are hopeful that the final settlement of their dispute with the Firemen will permit the firemen to be removed through attrition. This is in accordance with the procedure recommended in the Report to the President by the Emergency Board, dated May 13, 1963. If this recommendation becomes a reality and the carrier has 223 new employees over the age of sixty, the attrition will occur more rapidly.

It is also noteworthy that the Brotherhood contends that operating a locomotive with one of the 223 new employees sitting in the fireman's seat is, for all practical and legal considerations, "equivalent to having a bag of sand occupy the fireman's seat". Yet, the Brotherhood has actively solicited these new hires for membership as firemen. Thus, the plaintiff is in the untenable position of arguing that these men are not actually employed as firemen, while, at the same time actively soliciting them

for membership in their union. This is particularly significant in light of the fact that the Brotherhood's constitution states that an applicant for membership must be "actually employed as a locomotive fireman (helper) * * *".

■ It is the opinion of this Court that the defendant railroad has offered a satisfactory explanation for the change in work rules. There has been no showing that this change was made in contempt of our order.

■ There was a technical violation of the Order by the action of the defendants in operating 47 locomotives without the presence of firemen. However, it has been stipulated that the Southern operated more than 42,000 trains between June 28 and September 1, 1963. This would hardly amount to a willful and deliberate defiance, but, in our opinion, a remarkable effort to comply with the Order. The Court's order did not. require the carrier to operate with firemen until June 28th. According to the stipulation entered into between the parties, 35 of the 47 incidents occurred between June 28th and June 30th, and none have occurred since August 19th. These few instances do not amount to contempt and this court rules that there has been a substantial compliance in good faith.

Also, it is the Court's recollection that at the time of the original hearing on the injunction, counsel for both parties agreed that in order to return to the *status quo* the carrier would be required to hire from one hundred to one hundred and thirty-five new firemen. Good faith on the part of the railroad is further demonstrated by the fact that they were actually required to hire two hundred and twenty-three new men, far in excess of the number anticipated.

This Court has previously required the Southern Railway to return to the working conditions which existed prior to 1959. The evidence and the record indicate that defendants have complied with this decree. We will not expand our Order to interfere with the operating

rules of the railroad. No contempt has been established.

Accordingly, it is this 6th day of November, 1963,

Ordered, that plaintiff's motion for issuance of an order to show cause and for judgment of contempt, be, and the same hereby is, denied.