# INTERSTATE COMMERCE COMMISSION v. UNITED STATES OF AMERICA EX REL. HUMBOLDT STEAMSHIP COMPANY.

## ERROR TO. THE COURT OF APPEALS OF THE DISTRICT .OF COLUMBIA.

No. 859.   Argued April 16, 1912.—Decided April 29, 1912.

Alaska is a Territory of the United States within the meaning of § 1 of the Interstate Commerce Act, as amended June 29, 1906, 34 Stat. 584, c. 3591.

An organized Territory of the United States does not necessarily mean one having a local legislature as distinguished from one having a less autonomous form of government, such as that of Alaska.

Even if "Territory of the United States" as used in § 1 of the Inter-State Commerce Act as amended includes only organized Territories, Alaska falls within its meaning. *The Steamer Coquitlam,* 163 U. S. 346; *Binns* v. *United States,* 194 U. S. 486; *Rassmussen* v. *United States,* 197 U. S. 516.

The Hepburn Act of June 29, 1906, 34 Stat. 584, c. 3591, extended the provisions of the Interstate Commerce Act to interterritorial commerce and for the first time gave to the Commission the power to fix rates.   In so doing it made the act completely comprehensive, and the power given to the Commission superseded the power of the Secretary of the Interior to revise and modify rates of railroads in Alaska given by § 2 of the act of May 14, 1898, 30 Stat. 409, c. 299.

Mandamus can be issued to direct performance of a ministerial act but not to control discretion.   It may be directed to a tribunal, one acting in a judicial capacity, to proceed in a manner according to his or its discretion.

The jurisdiction to determine jurisdiction, *Ex parte Harding,* 219 U. S. 363, does not exist in an administrative body which is subject to having its jurisdicton defined by the courts.

The United States Commerce Court has no jurisdiction to review the action of the Interstate Commerce Commission in refusing to entertain a complaint because the subject is beyond its jurisdiction.   In such a case the remedy is by mandamus to compel the Commission

to .proceed and decide the case according to its judgment and discretion.

The Interstate Commerce Commission has jurisdiction to investigate violations of the Act to Regulate Commerce in Alaska, and to compel carriers in that Territory to conform to the law; and if the Commission refuses to act on the ground that it has no jurisdiction, mandamus will issue directing it to take jurisdiction.

39 Washington Law Reporter, 386, affirmed, and 19 I. C. C. 81, disapproved.

THE facts, which involve the status of common carriers in Alaska under the Interstate Commerce Act, and the jurisdiction of the Interstate Commerce Commission over common carriers in Alaska, are stated in the opinion.

*Mr. P. J. Farrell* for plaintiff in error:

Alaska is not a Territory of the United States within the meaning of § 1 of the Act to Regulate Commerce. *Matter of Water Carriers in Alaska,* 19 I. C. C. 81.

In the jurisdictional clause of the Hepburn Act, the District of Alaska is not included by name and the word "District" as used in that section is confined to the District of Columbia.

Alaska has never been officially designated as a Territory: see act of May 17, 1884; Rev. Stat. 1 Sup., c. 53, p. 430; act of June 4, 1887, providing for the appointment of commissioners of deeds and a marshal; act of July 24, 1897, providing for the appointment of a surveyor general; act of June 6, 1900, 31 Stat. 321, making further provision for a civil government for Alaska.

In the Appropriation Acts of 1907 and 1908, 34 Stat. 963, and 35 Stat. 212, Alaska is called a District, while Arizona, New Mexico, and Hawaii are described as Territories. See also acts of January 27, 1905, 33 Stat. 616; of March 3, 1905, 33 Stat. 1262 and 1265; § 1, act of February 4, 1887; act of June 18, 1910.

At the time the amendment of June 29, 1906, was passed Congress was acquainted with the rulings of the

Commission that the District of Alaska is not a Territory of the United States within the meaning of § 1 of the Act to Regulate Commerce. See the Townsend Bill (H. R. 17536), reported to the Whole House by the Committee on Interstate and Foreign Commerce in the second session of the Sixty-first Congress on April 1, 1910; and the Fletcher Bill (S. 9975), introduced January 9, 1911.

Both attempts to place common carriers operating lines of transportation in Alaska under the control of the Commission failed.

Under these circumstances, this court will consider itself bound by the interpretation of the Commission, which is the tribunal primarily charged with the enforcement of the provisions of said act. See *New Haven R. R. Co.* v. *Int. Com. Comm.*, 200 U. S. 361, holding that an interpretation placed on the act by the Commission in the cases of *Haddock* v. *Delaware, L. & W. R. Co.*, 4 I. C. C. Rep. 296, and *Coxe Bros. & Co.* v. *Lehigh Valley R. R. Co.*, 4 I. C. C. Rep. 535, was binding upon the court.

The authority conferred upon the Secretary of the Interior by the act of May 14, 1898, has not been taken away by § 10 of the Hepburn Law. The law does not favor repeals by implication, Alaska is not referred to by name either in the Hepburn Law or in the act to regulate commerce, and Congress has never specifically conferred upon the Commission jurisdiction over any common carrier in any district of the United States except the District of Columbia.

Mandamus is not a proper proceeding in which to correct an error of law like that alleged in the petition. *Commissioner of Patents* v. *Whiteley*, 4 Wall. 522; *West* v. *Hitchcock*, 19 App. D. C. 333, 342; *Decatur* v. *Paulding*, 14 Pet. 497, 514; *United States* v. *Black*, 128 U. S. 40, 48; *United States* v. *Guthrie*, 17 How. 284; *Georgia* v. *Stanton*, 6 Wall. 50; *Gaines* v. *Thompson*, 7 Wall. 347; *United States* v. *Windom*, 137 U. S. 636, 644; *United States* v. *Blaine*,

139 U. S. 306, 319; *United States* v. *Lamont*, 155 U. S. 303, 308; *Kimberlin* v. *Commission to Five Civilized Tribes et al.*, 104 Fed. Rep. 653.

The preliminary question of jurisdiction the Commission decided was as much within the scope of its authority as any other which could arise. Having resolved it in the negative, there was no occasion for the Commission to look further into the case. Only a reversal by the tribunal of appeal can revive it, and cast upon the Commission the duty of further action in the premises.

This proceeding in mandamus is not the only remedy open to defendant in error. See *Proctor & Gamble Co.* v. *United States*, 188 Fed. Rep. 221.

*Mr. Charles D. Drayton,* with whom *Mr. John B. Daish* and *Mr. James Wickersham* were on the brief, for defendant in error.

MR. JUSTICE MCKENNA delivered the opinion of the court.

The ultimate question in the case is whether Alaska is a Territory of the United States within the meaning of the Interstate Commerce Act as amended.

The Interstate Commerce Commission resolved the question in the negative and dismissed the petition of the Humboldt Steamship Company, the relator, which alleged violations of the act by the White Pass & Yukon Railway Company, operating in Alaska, applying its decision in *Matter of Jurisdiction Over Rail and Water Carriers Operating in Alaska,* 19 I. C. C. Rep. 81.

The steamship company instituted an action in the Supreme Court of the District of Columbia praying for a mandamus against the Commission to require it to take jurisdiction and proceed as required by the act and grant the relief for which the steamship company had petitioned,

hereinafter specifically mentioned. The proceeding was dismissed. The court expressed the view that the Commission had "ample authority to assume jurisdiction over common carriers in Alaska, the same as in any other Territory, and over those carriers operating between the State of Washington and Alaska, and between Alaska and Canada, and if they took jurisdiction no one could successfully question their right to do so." The court, however, held that it had no power "to require the Interstate Commerce Commission to act contrary to its own judgment in a matter wherein, after investigation, it had reached a conclusion, honestly and fairly, which might be contrary to the conclusion which the court would reach."

The Court of Appeals, to which court the case was taken by the steamship company, entertained the same view of the Interstate Commerce Act as that expressed by the Supreme Court, but took a different view of the power of the courts to compel action upon the part of the Commission, and reversed the judgment of the Supreme Court and remanded the cause, "with directions to issue a peremptory writ of mandamus directed to the Interstate Commerce Commission requiring it to take jurisdiction of said cause and proceed therein as by law required." To this ruling the Interstate Commerce Commission prosecutes this writ of error.

The proceedings before the Commission were instituted by the steamship company filing a petition (No. 2578) against the White Pass & Yukon Route, consisting of the Pacific & Arctic Railway & Navigation Company, British Columbia-Yukon Railway Company, British-Yukon Railway Company, and British-Yukon Navigation Company, to require said companies to file with the Commission, in the form prescribed by the Act to Regulate Commerce, and to print and keep open for public inspection, schedules showing their rates and charges for transportation of passengers and property between points in Alaska and

points in the Dominion of Canada and other places; to establish through routes and joint rates in conjunction with the petitioner between certain named places in Alaska and Seattle, in the State of Washington; to afford all reasonable, proper and equal facilities for the interchange of traffic between their respective lines; and to cease and desist from preventing by sundry devices the carriage of freights from being continuous from place of shipment to place of destination when such freight is originated or in any wise handled by the Humboldt Steamship Company.

The companies proceeded against filed answers. There were intervening companies on both sides of the controversy.

A hearing was assigned and had in October, 1909, and subsequently, July 6, 1910, the Commission decided that it was "without jurisdiction to make the order sought by complainant," resting its ruling upon the authority of its decision in *Matter of Jurisdiction Over Rail and Water Carriers Operating in Alaska, supra.*

Section 1 of the Interstate Commerce Act provides that the provisions of the act "shall apply to any  .  .  . common carrier or carriers engaged in the transportation of passengers or property wholly by railroad (or partly by railroad and partly by water when both are used under a common control, management, or arrangement for a continuous carriage or shipment), from one State or Territory of the United States, or the District of Columbia, to any other State or Territory of the United States, or the District of Columbia, or from one place in a Territory to another place in the same Territory,  .  .  .  or from any place in the United States through a foreign country to any other place in the United States.  .  .  ."   34 Stat. 584.

The pivotal words are: "From one State or Territory of the United States  .  .  .  to any other State or

Territory, . . . or from one place in a Territory to another place in the same Territory," "Territory" being the especially significant word.

If we may venture to reduce to a single proposition an elaborate discussion of elements and considerations, we may say that the Commission gave to the word "territory" the signification of "organized territory," the chief and determining feature of which is a local legislature as distinguished from a territory having a more rudimentary and less autonomous form of government which it considered Alaska possessed.

To this signification and distinction the arguments of counsel are addressed, and much of the reasoning of the lower courts. That field, however, has been traversed by cases in this court, and it need not again be passed over. We may accept and apply the conclusions which have been reached and expressed.

In the case of *Steamer Coquitlam* v. *United States*, 163 U. S. 346, the relation of the courts of Alaska to the Federal judicial system and the applicability of certain statutes concerning the same were decided, after a review of those statutes and those defining the status of Alaska.

By the fifteenth section of the act of March 3, 1891, creating the Circuit Court of Appeals, it is provided that the Circuit Court of Appeals, in cases in which the judgments of the Circuit Courts of Appeal are made final by this act, shall have "the same appellate jurisdiction, by writ of error or appeal, to review the judgments, orders, and decrees of the supreme courts of the several Territories as by this act they may have to review the judgments, orders, and decrees of the district courts and circuit courts; and for that purpose the several Territories shall, by orders of the supreme court, to be made from time to time, be assigned to particular circuits." 26 Stat. 826, 830, c. 517.

In execution of the duty imposed by that section, this

court, by an order promulgated May 11, 1891, assigned Alaska to the Ninth Judicial Circuit.

Subsequent to this order the United States brought a suit in admiralty in the District Court of Alaska for the forfeiture of the steamer Coquitlam because of an alleged violation of the revenue laws. A decree was rendered for the United States and an appeal was prosecuted to the Circuit Court of Appeals for the Ninth Circuit. The United States disputed the jurisdiction of the court on the grounds: (1) that the District Court of Alaska was not a district court within the meaning of the sixth section of the Circuit Court of Appeals Act; and (2) that the District Court of Alaska was not a Supreme Court of a Territory within the meaning of that act and the order of this court assigning Alaska to the Ninth Circuit.

The court certified the questions to this court. We answered the first in the negative and the second in the affirmative. We said, through Mr. Justice Harlan, that the Circuit Court of Appeals Act was necessarily interpreted by this court as conferring appellate jurisdiction upon the Circuit Court of Appeals when by the "order of May 11, 1891, 139 U. S. 707, Alaska was assigned to the Ninth Circuit." And it was further said (p. 352): "Alaska is one of the Territories of the United States. It was so designated in that order and has always been so regarded. And the court established by the act of 1884 (providing for a civil government for Alaska) is the court of last resort within the limits of that Territory. . . . No reason can be suggested why a Territory of the United States, in which the court of last resort is called a Supreme Court, should be assigned to some circuit established by Congress that does not apply with full force to the Territory of Alaska, in which the court of last resort is designated as the District Court of Alaska. The title of the territorial court is not so material as its character."

The case needs no comment. It clearly defines the

relation of Alaska to the rest of the United States. It was not a description of a definite area of land or "landed possession," but of a political unit, governing and being governed as such.

This view is reinforced by other cases. In *Binns* v. *United States*, 194 U. S. 486, 490, 491, we said, through Mr. Justice Brewer, that we had held in *Steamer Coquitlam* v. *United States* that "Alaska is one of the Territories of the United States." And also: "Nor can it be doubted that it is an organized Territory, for the act of May 17, 1884, 23 Stat. 24, entitled 'An act providing a civil government for Alaska,' provided: That the territory ceded to the United States by Russia by the treaty of March thirtieth, eighteen hundred and sixty-seven, and known as Alaska, shall constitute a civil and judicial district, the government of which shall be organized and administered as hereinafter provided."

In *Binns* v. *United States* the fact of a local legislature, or indeed any special form of government, was not considered as necessarily a feature of an organized Territory. "It must be remembered," it was said, "that Congress in the government of the Territories as well as of the District of Columbia, has plenary power, save as controlled by the provisions of the Constitution, that the form of government it shall establish is not prescribed, and may not necessarily be the same in all the Territories." There is much more in that case which might be quoted as establishing that the status of Alaska is that of an organized Territory. See also *Rassmussen* v. *United States*, 197 U. S. 516.

It is contended further by the Commission that railways were first authorized to be constructed in Alaska by the act passed May 14, 1898, 30 Stat. 409, c. 299, and that § 2 of the act provided as follows:

"That all charges for the transportation of freight and passengers on railroads in the District of Alaska shall be

printed and posted as required by section six of an Act to regulate commerce as amended on March second, eighteen hundred and eighty-nine, and such rates shall be subject to revision and modification by the Secretary of the Interior."

The argument is that this provision brings into force § 6 of the Interstate Commerce Act, and that, it is said, "under familiar rules of construction, excludes the application of every other section in the act," and that, besides, the provision that the rates on the Alaskan railroads should be subject to revision and modification by the Secretary of the Interior "negatived the jurisdiction of the Interstate Commerce Commission, even if Alaska was apprehended to be within section 1 of the Interstate Commerce Act."

These contentions do not seem to have been made in either the Supreme Court of the District or in the Court of Appeals. It was referred to very briefly as a circumstance to be considered in a majority report of the Interstate Commerce Commission in the ruling case, and more at length in the minority report. In the latter report important circumstances were pointed out. The Interstate Commerce law preceded that which gave authority to the Secretary of the Interior to revise and modify railroad rates, and the authority was confined to that special exercise, and, so far, it may be said to have amended the Interstate Commerce Act. At that time it had been held in the *Maximum Rate Cases* (162 U. S. 184; 167 U. S. 479; and 168 U. S. 144), that Congress had not conferred upon the Interstate Commerce Commission the legislative power to prescribe rates, either maximum, minimum or absolute. The power to prescribe a rate was conferred by the amendment of June 29, 1906, and that amendment extended the provisions of the act for the first time to intraterritorial commerce. The amendment made the act completely comprehensive of the whole subject and

entirely superseded the minor authority which had been conferred upon the Secretary of the Interior. As said by the minority of the Commission: "There is no suggestion of doubt that the ends of justice require as much the application of the same principle and regulation in Alaska as in New Mexico or Arizona." The two latter at the time this was said were Territories.

It is next contended by the Commission that "mandamus is not a proper proceeding to correct an error of law like that alleged in the petition."

The general principle which controls the issue of a writ of mandamus is familiar. It can be issued to direct the performance of a ministerial act, but not to control discretion. It may be directed against a tribunal or one who acts in a judicial capacity to require it or him to proceed, the manner of doing so being left to its or his discretion. It is true there may be a jurisdiction to determine the possession of jurisdiction. *Ex parte Harding*, 219 U. S. 363. But the full doctrine of that case cannot be extended to administrative officers. The Interstate Commerce Commission is purely an administrative body. It is true it may exercise and must exercise *quasi* judicial duties, but its functions are defined and, in the main, explicitly directed by the act creating it. It may act of its own motion in certain instances—it may be petitioned to move by those having rights under the act. It may exercise judgment and discretion, and, it may be, cannot be controlled in either. But if it absolutely refuse to act, deny its power, from a misunderstanding of the law, it cannot be said to exercise discretion. Give it that latitude and yet give it the power to nullify its most essential duties, and how would its non-action be reviewed? The answer of the Commission is, by "a reversal by the tribunal of appeal." And such a tribunal, it is intimated, is the United States Commerce Court.

But the proposition is plainly without merit, even al-

though it be conceded, for the sake of argument, that the Commerce Court is by law vested with the exclusive power to review any and every act of the Commission taken in the exertion of the authority conferred upon it by statute; that is, to exclusively review, not only affirmative orders of the Commission granting relief, but also the action of that body in refusing to award relief on the ground that an applicant was not entitled to relief. This is so because the action of the Commission refusing to entertain a petition on the ground that its subject-matter was not within the scope of the powers conferred upon it, would not be embraced within the hypothetical concessions thus made. A like view disposes of the cases relied upon in which it was decided that certain departmental orders were not susceptible of being reviewed by mandamus. We do not propose to review the cases, as we consider them to be plainly inapposite to the subject in hand.

In the case at bar the Commission refused to proceed at all, though the law required it to do so; and to so do as required—that is, to take jurisdiction, not in what manner to exercise it—is the effect of the decree of the Court of Appeals, the order of the court being that a peremptory writ of mandamus be issued directing the Commission "to take jurisdiction of said cause and proceed therein as by law required." In other words, to proceed to the merits of the controversy, at which point the Commission stopped because it was "constrained to hold," as it said, "upon authority of the decision recently announced in *In the Matter of Jurisdiction Over Rail and Water Carriers Operating in Alaska*, 19 I. C. C. Rep. 81, that the Commission is without jurisdiction to make the order sought by complainant," the steamship company.

*Judgment affirmed.*