# UNITED STATES EX REL. LOUISVILLE CEMENT COMPANY *v.* INTERSTATE COMMERCE COMMISSION.

---

INTERSTATE COMMERCE COMMISSION; POWERS; REVIEW; MANDAMUS.

1. The Interstate Commerce Commission is an administrative body with certain judicial functions, in the exercise of which it is called upon to employ judgment and discretion; and these functions include the power to determine whether a shipper's claim for a refund of overcharges by a carrier are barred by limitation.
2. This court has no supervisory powers over the Interstate Commerce Commission, by which to control its actions upon questions within its jurisdiction.
3. Mandamus is not the proper remedy to control the judgment and discretion of an executive tribunal in the decision of a matter, which is by law imposed upon it.
4. A decision by the Interstate Commerce Commission that a shipper's claim for a refund of overcharges by a carrier is barred by limitation cannot be reviewed by mandamus.
5. Mandamus cannot be made the substitute for a writ of error.

No. 2737.   Submitted November 4, 1914.   Decided December 7, 1914.

HEARING on an appeal by the relator from a judgment of the Supreme Court of the District of Columbia dismissing its petition for a writ of mandamus to compel the Interstate Com-

merce Commission to take jurisdiction and proceed on a complaint filed by relator before it.                         *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment of the supreme court of the District of Columbia, dismissing a petition for writ of mandamus to the Interstate Commerce Commission to compel it to take jurisdiction and proceed on a complaint filed by the Louisville Cement Company, relator, before said Commission, November 15, 1911.

In its opinion rejecting part of the claim of said petition it is correctly recited as follows:

"In its petition, filed November 15, 1911, it is alleged that defendants charged an unreasonable rate for the transportation of coal in carloads from North Jellico and Wilton, Kentucky, to Speeds. Reparation is asked. The shipments of coal on which reparation is asked were made during the period from July 23, 1906, to April 9, 1907.

"It appears that the Louisville & Nashville established and maintained from mines on its line within what is known as group No. 1 in the State of Kentucky, a rate of $1 per net ton on coal in carloads to Speeds for sometime prior to July 22, 1906. North Jellico and Wilton are included within the territory which is covered by group No. 1 in the tariff. On July 22, 1906, a supplement to the Louisville & Nashville tariff became effective which named a rate of $1.10 per ton on coal in carloads from the points of origin here involved to Speeds. The shipments of coal to Speeds from the mines in question were billed from Woodbine, Kentucky. The agent at Woodbine, not having been advised of the publication of the $1.10 rate, continued to bill the shipments at $1, and complainant paid no more than that rate up to February 11, 1907. Shortly previous to the last-named date the agent of the Louisville & Nashville discovered that $1.10 rate had been published, and thereafter collected that rate on shipments made by complainant.

"April 19, 1907, the complainant addressed a letter to the Commission, explaining that the rate on coal from North Jellico and Wilton to Speeds had by mistake been increased 10 cents a ton, and that the increase had remained in effect from July 22, 1906, to April 10, 1907. This letter was received by the Commission April 22, 1907. In the letter the complainant asked the following:

" 'Under the circumstances, will your honorable body authorize the Louisville & Nashville to refund this overcharge on all shipments of coal from February 1 to April 10, the date when the corrected amendment went into effect? * * * We are satisfied the L. & N. R. R. Co. would be willing to refund this overcharge provided authority is given by your honorable body.'

"On April 22, 1907, complainant was advised by the Commission by letter, that if the Louisville & Nashville would file with the Commission an admission that the rate from the points in question to Speeds was increased through error, and ask authority to make refund, the subject would receive consideration. Complainant was also advised that if the Louisville & Nashville was not willing to submit the case in this manner, it would be necessary for complainant to file formal complaint.

"It appears that complainant at once took the matter up with the officials of the Louisville & Nashville upon receipt of the Commission's letter. The Louisville & Nashville refused to submit the case to the Commission until complainant had paid undercharges on shipments which had been made during the period from July 22, 1906, to February 10, 1907, amounting to $1,335.25. The amount of reparation sought by complainant on shipments made after the $1.10 rate was collected was $595.65. The result of continued negotiations between complainant and the Louisville & Nashville was that in February, 1911, the complainant paid the carrier $1,335.25; and complainant now asks the Commission for an order for reparation in the sum of $1,930.90.

"The facts are admitted. The Louisville & Nashville as-

serts that it never intended to establish the rate of $1.10. It further agrees that an order for reparation should be issued. We are of opinion that under the circumstances the $1.10 rate was unreasonable to the extent it exceeded $1. The only question left for determination is whether the claim is barred, in whole or in part, by the following limitation in the act:

" 'All complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and not after.'

"The Commission holds that the date the cause of action accrues is the date of the delivery of the shipment. *L. W. Blinn Lumber Co.* v. *Southern P. Co.* 18 Inters. Com. Rep. 430. The filing with the Commission of a letter which gives the name of the complainant, the shipments on which reparation is asked, the points of origin and destination, and the rates on which the claim is based, is held to be sufficient to stop the running of the statute. *Woodward & Dickerson* v. *Louisville & N. R. Co.* 15 Inters. Com. Rep. 170; *Youngblood* v. *Texas & P. R. Co.* 21 Inters. Com. Rep. 569; *Marian Coal Co.* v. *Delaware, L. & W. R. Co.* 27 Inters. Com. Rep. 441. The letter written by complainant and filed with the Commission April 22, 1907, referred only to shipments made by complainant from February 1, 1907, to April 10, 1907. This letter gave sufficient details with respect of the shipments made between the dates named to stop the running of the statute. No complaint was filed by complainant with reference to shipments made before February 1, 1907, until the petition here in question was filed on November 15, 1911; and these shipments had all been delivered more than four years before the filing of that petition. They are therefore barred from our consideration."

*Mr. J. V. Norman, Mr. Frank Lyon,* and *Mr. George H. Lamar* for the appellant.

*Mr. Joseph W. Folk* and *Mr. Charles W. Needham* for the appellee.

Mr. Chief Justice Shepard delivered the opinion of the Court:

It appears from the foregoing statement that the Interstate Commerce Commission entertained the petition of the relator, awarding the payment of a part of his damages but denying the sum of $1,335.25 for excess charges for freight delivered from July 22, 1906, to February 10, 1907, because, in the opinion of the Commission that payment was barred by limitation, which it held had begun to run from the date of the delivery of the freight instead of from the date of payment. The relator's contention is that the Interstate Commerce Commission declined to take jurisdiction of the claim for $1,335.25 by reason of its error in the determination of the limitation. It construes the recital that this claim is barred from consideration in the opinion to be a refusal to take jurisdiction of that part of the claim, and that it may, therefore, be compelled by mandamus to assume such jurisdiction. *Interstate Commerce Commission* v. *United States*, 224 U. S. 474, 56 L. ed. 849, 32 Sup. Ct. Rep. 556. The case cited does not govern this proceeding. In that case the Interstate Commerce Commission declined to take jurisdiction, because, in its opinion, Alaska was not a territory of the United States within the meaning of the Interstate Commerce Act. The court, being of the opinion that Alaska was a territory within the meaning of the amended act, and that the Interstate Commerce Commission was in error in holding that it was not, ordered the writ to issue to compel it to take jurisdiction of the case and to proceed therein as by law required.

The Interstate Commerce Commission is an administrative body with certain judicial functions. In the exercise of these functions, it is called upon to exercise judgment and discretion. It took jurisdiction of the complaint, but refused the order for the payment of part of the same, because, in its opinion, it was barred by the limitation provided in the act. It was the duty of the Interstate Commerce Commission to determine the question whether the claim was barred by limitation, and it did so

in accordance with former decisions of the same tribunal. Whether its decision is right or wrong is not the question. This court has no general supervisory power over the Interstate Commerce Commission by which to control its action upon questions within its jurisdiction. Mandamus is not the proper writ to control the judgment and discretion of an executive tribunal in the decision of a matter, the decision of which is by law imposed upon it. It cannot be made the substitute for a writ of error. *United States ex rel. Riverside Oil Co.* v. *Hitchcock,* 190 U. S. 316, 325, 47 L. ed. 1074, 1078, 23 Sup. Ct. Rep. 698.

There may have been error in its adjudication of the question of limitation, but that error we cannot review.

The court below was right in dismissing the petition, and its judgment is affirmed, with costs.                    *Affirmed.*