**DOW v. ICKES, Secretary of the Interior, et al.**

No. 7911.

United States Court of Appeals for the District of Columbia.

Decided Aug. 4, 1941.

910

Daniel J. Hanlon, of Washington, D. C., and Wilbur E. Dow, Jr., of New York City,

of the Bar of New York, pro hac vice, by special leave of court, for appellant.

Nathan R. Margold, Sol., Leland O. Graham and David M. Hudson, Asst. Sol., Department of the Interior, and W. Robert Koerner, Department of Justice, all of Washington, D. C., of the Bar of Minnesota, pro hac vice, by special leave of court, for appellees.

Before GRONER, C. J., and EDGERTON and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

Appellant sought to enjoin the Secretary of the Interior from carrying into effect regulations relating to trap fishing for salmon in Alaskan waters; to require him to issue other regulations opening to such fishing either specified sites or general areas of the Alaskan coast line from which appellant might select a site or sites; and to enjoin the Secretary of War from continuing the practice of issuing only one War Department permit for construction of a trap at any given site open to trap fishing in Alaskan waters. Appellees filed separate motions to dismiss the suit. The appeal is from the orders of dismissal made upon these motions.

The challenged regulations were issued pursuant to an Act of Congress [1] which authorizes the Secretary of the Interior, in order to conserve the fisheries in Alaskan waters, to "set apart and reserve fishing areas," and within them to "establish closed seasons during which fishing may be limited or prohibited as he may prescribe." The statute prescribes specific methods [2] by which the Secretary may limit fishing and prohibits it except "in conformity with such rules and regulations" as he has prescribed. However, it provides, by way of limitation, "That every such regulation * * * shall be of general application within the particular area to which it applies, and that no exclusive or several right of fishery shall be granted therein, nor shall any citizen of the United States be denied the right to take, prepare, cure, or preserve fish

[1] Act of June 6, 1924, 43 Stat. 464, § 1, as amended June 18, 1926, 44 Stat. 752, 48 U.S.C. §§ 221–224, 48 U.S.C.A. §§ 221–224. The section is as follows: "That for the purpose of protecting and conserving the fisheries of the United States in all waters of Alaska the Secretary of Commerce [now Secretary of the Interior, in accordance with Reorganization Plan No. II (53 Stat. 1433), effective July 1, 1939] from time to time may set apart and reserve fishing areas in any of the waters of Alaska over which the United States has jurisdiction, and within such areas may establish closed seasons during which fishing may be limited or prohibited as he may prescribe. Under this authority to limit fishing in any area so set apart and reserved the Secretary may (a) fix the size and character of nets, boats, traps, or other gear and appliances to be used therein; (b) limit the catch of fish to be taken from any area; (c) make such regulations as to time, means, methods, and extent of fishing as he may deem advisable. From and after the creation of any such fishing area and during the time fishing is prohibited therein it shall be unlawful to fish therein or to operate therein any boat, seine, trap, or other gear or apparatus for the purpose of taking fish; and from and after the creation of any such fishing area in which limited fishing is permitted such fishing shall be carried on only during the time, in the manner, to the extent, and in conformity with such rules and regulations as the Secretary prescribes under the authority herein given: *Provided*, That every such regulation made by the Secretary of Commerce [Interior] shall be of general application within the particular area to which it applies, and that no exclusive or several right of fishery shall be granted therein, nor shall any citizen of the United States be denied the right to take, prepare, cure, or preserve fish or shellfish in any area of the waters of Alaska where fishing is permitted by the Secretary of Commerce [Interior]. The right herein given to establish fishing areas and to permit limited fishing therein shall not apply to any creek, stream, river, or other bodies of water in which fishing is prohibited by specific provisions [of sections 221 to 228] of this Act [title], but the Secretary of Commerce [Interior] through the creation of such areas and the establishment of closed seasons may further extend the restrictions and limitations imposed upon fishing by specific provisions of [the above-mentioned sections or any other law] this or any other Act of Congress: *Provided further*, That the Secretary of Commerce [Interior] is hereby authorized to permit the taking of fish or shellfish, for bait purposes only, at any or all seasons in any or all Alaskan Territorial waters."

[2] It is not intended to intimate that the statutory enumeration of methods is exclusive of others.

or shellfish in any area * * * where fishing is permitted * * *."

The gist of appellant's complaint is that the regulations, and more particularly the method by which they have been applied to trap fishing since 1927, violate this limitation. The consequence, it is said, has been to deprive appellant of his common and equal right of fishing and to create what is in effect a monopoly of trap fishing on the Aleutian Peninsula and in Western Alaska. It is alleged that three large corporations own or control all fish traps in these regions, except three that are owned by individuals. Somewhat similar conditions are said to prevail in Southern Alaska.

Relief is sought also against the Secretary of War. Section 10 of the Rivers and Harbors Act of March 3, 1899,[3] prohibits the creation of obstructions in navigable waters except on plans authorized by the Secretary of War. The complaint alleges that the Secretary, under an agreement with the Secretary of the Interior, refuses to issue more than one permit for erection of a trap on any given site as described in the regulations issued by the latter. The single permit is issued to the person whose application for the site is approved by the Secretary of the Interior.

Appellant alleges that he applied for the allocation of two sites in the waters of Western Alaska and for a War Department permit, but that his applications were denied. He charges that the Secretary of the Interior's action in designating and approving sites "is not based upon any scientific or independent investigation * * * in respect to the particular location open

for fishing, but depends entirely upon * * * arbitrary, irregular and discriminatory selection * * *," and that the Secretary of War acts "solely upon his own responsibility under agreement with the Secretary of the Interior," implying at least that this is beyond his power.

Appellees urge that the action is an attempt to sue the United States without its consent; that appellant has no legal right which will permit him to maintain the action; that the complaint shows no act of the appellees which prevents him from exercising the common right of fishing "as limited by law"; and that the action does not lie to control the exercise of appellees' discretion under the applicable statutes. Additional contentions made by the Secretary of War need not be stated with particularity.

Appellant complains of the regulations and of their practical application to trap fishing. Prior to 1927 the regulations opened all Alaskan waters to fishing, except specified areas, such as the mouths of streams, spawning beds, etc. Beginning with that year they have closed all Alaskan waters, except specified areas.[4] As applied to trap fishing the excepted areas are particular trap sites, designated by a point shown by exact lines of latitude and longitude, at and within 500 feet of which only a single trap is permitted. Application must be made for these sites in advance of issuance of the regulations annually. For the present year some 500 sites were allocated in the waters of Alaska, not including those applied for by appellant.

[3] 30 Stat. 1121, 1151, 33 U.S.C. § 403 (1934), 33 U.S.C.A. § 403, which is as follows: "That the creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is hereby prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of War * * *."

[4] The regulation governing the taking of salmon by trap in the Alaska Penin-

sula area during 1941 [4 Fed. Reg. 908, 912 (D. I.) § 205.17] reads in part as follows:

"The use of any trap for the capture of salmon is prohibited, except as follows:

"(a) Unimak Island: Along the coast on the west and south sides of Ikatan Bay (1) from a point on False Pass (Isanotski Strait) at 54 degrees 48 minutes 54 seconds north latitude, 163 degrees 22 minutes 18 seconds west longitude, to a point at 54 degrees 46 minutes 44 seconds north latitude, 163 degrees 21 minutes 32 seconds west longitude * * *

"(b) Unimak Island: Along the coast of East Anchor Cove within 2500 feet, measured along the coast, from a point at 54 degrees 41 minutes 21 seconds north latitude, 163 degrees 3 minutes 36 seconds west longitude * * *."

Appellant says that prior to 1927 the Act and the regulations "functioned perfectly," there being "open areas into which any fisherman might go and erect his trap." Since then, however, under the changed form of regulation, he is required to secure approval of each specific site, and if this is denied, "he is simply unable to fish. *Without open areas into which he might go,* he was thereby restricted to any spot which the Bureau [of Fisheries] [5] might be willing to grant him. No substitute or other place where he might build a trap were [*sic*] offered to the unsuccessful fisherman-applicant in lieu of the one denied him."[6] (Italics supplied.)

In view of this statement, it is apparent that the core of appellant's grievance consists either in the denial of his application for the specific sites described in it or the failure of the Secretary to designate a general area, in addition to the particular sites approved, into which appellant might go, select a site, erect his trap, and use it for fishing. What he seeks, therefore, is an order directing the Secretary to approve the sites for which he has applied or to open a general area for the location of additional sites. This appears also from the prayer for relief which is made in the complaint.[7]

■ It would be clearly beyond the court's power to direct the Secretary to approve the sites for which appellant has applied or, as the complaint puts it, to order that he "issue supplemental regulations em-bodying the two sites * * * opening such sites for the capture of salmon by lawful structures called traps." To do this would be to direct the Secretary exactly as to the manner in which his discretion should be exercised and substitute the court's judgment for that of the Secretary. Furthermore, if appellant is correct in the view that the system presently used is contrary to the statute, granting this form of relief would merely extend its illegal operation so as to include appellant as a beneficiary.

Alternative to approval of the selected sites, appellant asks that the Secretary be directed to open "sufficient coast-line * * * for the voluntary erection of fish traps from which the plaintiff might select a site" or, what in effect is the same thing, "to return [to] regulations similar to those in use prior to the year 1927." In substance the relief sought is that the Secretary be ordered to open for trap fishing areas now closed to it. This, too, we think would be beyond the power of the court.

■ The statute invests the Secretary with the power to set aside and reserve fishing areas. The function is executive and highly discretionary. We need not determine whether he could close all Alaskan waters to all fishing. Conceivably he could do so, at least in exceptional circumstances. But he has not done so. If, however, the statute is assumed to contemplate that some area or areas shall be opened, it leaves their extent and location entirely to the Secre-

---

[5] The Secretary's discretion is exercised through the Bureau to a large extent.

[6] Appellant admits however that the tender of a substitute site "would not be satisfactory from a practical point of view" since "trap fish sites must be prospected for as gold is prospected for, and there is no assurance that the site requested would 'prove out,' as the fishermen say, even if a trap were built."

[7] The prayer in full is as follows: "Wherefore, the plaintiff prays judgment that the defendant herein, Harold L. Ickes, as Secretary of the Interior, be enjoined and restrained from carrying into effect the regulations herein complained of, and that he be ordered forthwith to issue supplemental regulations embodying the two sites above referred to, described in paragraph three hereof, opening such sites for the capture of salmon by lawful structures called traps, or that sufficient coast-line be opened for the voluntary erection of fish traps from which the plaintiff might select a site, or for such other and further relief as might enable him to share in the industry in common with others now operating therein, or that this defendant be ordered to return [to] regulations similar to those in use prior to the year 1927, and which type of regulations in use at the time the statute referred to herein was enacted, in such fashion that all the waters of Alaska, except mouths of streams, spawning beds, etc., be again opened to fishing by trap within such limits prescribed in the Act as to time, means, method and extent, as to the Secretary may seem advisable; and that the defendant herein, Henry L. Stimson, as Secretary of War, be restrained, enjoined and ordered to cease and desist from his present practice of issuing only one permit to a trap site and for such other and further relief as the court may deem just and proper."

tary's discretion. The statute prescribes no limit as to the area which shall be closed and no requirement as to that which shall be left open. It assumes that these will vary with time and circumstance, and leaves them to the Secretary's judgment. Furthermore, within the open areas he prescribes, he has authority to control the time, methods and extent of fishing. He is empowered to "establish closed seasons during which fishing may be limited or *prohibited as he may prescribe*." (Italics supplied.) He is authorized to fix the size *and character* of fishing devices; limit the catch; and "make such regulations as to time, *means, methods* and extent of fishing *as he may deem advisable*." (Italics supplied.)

■ Broader discretion hardly could have been conferred. The power to discriminate is geographical, temporal, mechanical, quantitative, and selective as to different varieties of fish. Taking of herring could be permitted, of salmon prohibited. Use of seines and boats with nets could be allowed, that of dynamite and traps prohibited.[8] No standard for making these discriminations is prescribed, except the general purpose of conservation and the limitation concerning monopoly, if indeed these can be regarded in any sense as standards. The power given is appropriate for the regulation of activities upon the public domain, having as their object the reduction of public property to private use. Limitations ordinarily applicable in the regulation of private enterprise have, and are given, no application to the control of such activities. Indeed, appellant does not contend that the statute is invalid for want of sufficient standards, or that the Secretary could not prohibit all fishing for salmon or all fishing by traps in Alaskan waters.

■ It is apparent that the court has no power to interfere with the exercise of the Secretary's discretion under the statute by directing him affirmatively to approve the specific sites for which appellant has applied or to open to salmon fishing by traps a general area or areas which would include such sites. To do either would be to require him to open for such fishing areas which he has determined shall be closed to it. This in effect would oust him of his discretion and substitute the court's judgment for it.

■ It is true that courts have the power to order an executive or administrative official to perform executive or administrative functions in certain instances, when he has wholly declined to do so.[9] But they have no power to direct him as to the manner in which his discretion shall be exercised.[10] When it appears, therefore, that the official has exercised his judgment, even though erroneously in the view of the court, relief ordinarily cannot be granted.

■■ The Secretary has not declined to act. On the contrary he has exercised his discretion by promulgating and applying extensive and highly detailed regulations. They differentiate not only as to areas open for fishing, but as to details of time, varieties of fish, and permissible appliances within them. It is to be kept in mind that the statute, and therefore the discretion which it confers, comprehend all commercial fishing in Alaskan waters, not

---

[8] Thus Section 201.16 of the 1941 Regulations prohibits the use of "dynamite or any other explosive in the taking or killing of any fish." Section 201.6 prohibits use of trammel nets, diver nets, trawls, combination nets, hammerhead traps, while it permits use of drift gill nets, stake nets, set nets, driven traps, floating traps, purse seines, beach seines, fish wheels, etc. Section 205.22 prohibits commercial fishing for herring by trap in the Alaska Peninsula area. In some of the areas fishing by trap is entirely prohibited.

[9] Cf. Roberts v. Valentine, 1900, 176 U.S. 221, 20 S.Ct. 376, 44 L.Ed. 443; Interstate Commerce Commission v. Humboldt S. S. Co., 1912, 224 U.S. 474, 32 S.Ct. 556, 56 L.Ed. 849; Louisville

Cement Co. v. Interstate Commerce Commission, 1918, 246 U.S. 638, 38 S.Ct. 408, 62 L.Ed. 914; Cotonificio Bustese, S. A. v. Morgenthau, — App.D.C. —, 121 F.2d 884, decided April 28, 1941.

[10] Work v. Rives, 1925, 267 U.S. 175, 177, 45 S.Ct. 252, 69 L.Ed. 561; United States ex rel. Goldberg v. Daniels, 1913, 231 U.S. 218, 221, 34 S.Ct. 84, 58 L.Ed. 191; Morrison v. Work, 1925, 266 U. S. 481, 486, 45 S.Ct. 149, 69 L.Ed. 394; Transcontinental & Western Air, Inc., v. Farley, 2 Cir., 1934, 71 F.2d 288, 291, certiorari denied, 1935, 293 U.S. 603, 55 S.Ct. 119, 79 L.Ed. 695; Decatur v. Paulding, 1840, 14 Pet. 497, 10 L.Ed. 559, 609; Roughton v. Ickes, 1938, 69 App.D.C. 324, 101 F.2d 248.

merely fishing for salmon by trap. They relate to a broad, inclusive and co-ordinated scheme. Effective control in particular respects amounts to nothing toward achieving conservation unless the scheme as a whole works to that end. The regulations are designed to secure the latter effect. It is not contended that they are void as a whole. If the Secretary has acted erroneously in relation to fishing for salmon by trap, the matter is one of detail affecting the manner in which his discretion has been exercised, and not one affecting the general scheme. It is therefore one with which the courts have no power to interfere, more particularly in the manner sought by appellant. For them to direct the Secretary to approve specific sites or to open general areas to particular kinds of fishing, both as to the variety of fish and as to the type of appliance, would be to prescribe in detail the manner in which his discretion should be exercised. What appellant seeks is to have the court not merely direct the Secretary to act, but tell him what to do.

■ The fundamental fallacy of appellant's argument, so far as it seeks the opening of new sites or additional general areas for fishing, is in the assumption that because the Secretary may have acted illegally in the method by which he has allocated trap sites, that confers upon appellant either the right to require him to do so also as to the sites for which he has applied or the right to have additional areas opened for the "voluntary" location and use of such sites. Neither conclusion follows from the premise. As has been said, the first would merely make appellant a beneficiary of the allegedly illegal system. That the second might provide a method which, if adopted by the Secretary, would avoid the alleged violation of the statutory limitation, does not establish the appellant's right to require him to adopt it or have the courts order him to do so. To do that it would be necessary to show not only that this method would avoid the allegedly illegal discrimination, but that it is the only one which would do so. Appellant has not shown this. The Secretary might prefer some other method or to close Alaskan waters entirely to fishing for salmon by trap. It follows that the affirmative relief which appellant seeks, whether by way of an order directing the approval of specific sites or one directing the opening of new general areas to fishing for salmon by trap, cannot be granted.

It remains to consider whether relief which is wholly negative in character is sought or can be afforded. It is highly doubtful that appellant seeks such, relief. Obviously what he wants is an order, whatever its form, which will permit him to fish at the sites he has selected,[11] or in any event, at points now closed to trap fishing. That, as we have held, cannot be granted. Appellant does not ask specifically that those whose sites have been approved be enjoined from fishing at them. He could not well do so without making them parties to the suit. That he seeks a similar privilege for himself indicates that he does not wish this form of relief. Nor does appellant assert a right to have allocated to himself any of the sites which have been approved. The case might well be disposed of therefore, in this aspect, by concluding that appellant does not seek relief which is wholly negative in character.

But he does couple his prayer for affirmative relief with one asking that the present regulations as to salmon trap fishing be held invalid, and with one for general relief. And at the argument counsel stated that the only relief necessary to sustain his client's cause would be a decision that the present regulations are invalid. Assuming therefore that appellant seeks an order to this effect, we do not think it can be granted.

For negative, as for affirmative relief, appellant's asserted basis is that the trap fishing regulations have deprived him of the common and equal right of fishing which the statute guarantees to all citizens. Practically speaking, the argument means that appellant must be allowed to fish by trap if others are permitted to do so. This can be done in only two ways, one by opening new areas or sites, the other by allocating to appellant a site or sites now allocated to others. The first we have held unavailable by judicial action, the second appellant does not seek. Appellant's claim therefore appears to reduce itself to that of a mere general right to have the regulations declared void. Viewed in this light it is at least doubtful whether he has a sufficient

---

11 This is borne out by appellant's admission (cf. note 6, supra) concerning the unsatisfactory practical result of allocating specific substitute sites.

legal interest in the subject matter of the suit to enable him to maintain it.[12] But, assuming that he has, we do not think he has shown that the statute has been violated so as to infringe any right which the limitation guarantees to him.

As we have said, appellant has no right to complain that any specific waters are closed to trap fishing. In that respect there is and can be no discrimination. All are barred alike. His only basis for possible complaint is that he may not have been given an equal opportunity with others to fish in waters which are opened to it. But the statute does not guarantee equality in an absolute sense. It prohibits monopoly, but it does not prohibit reasonable discriminations required by the purpose of conservation and limitations inherent in the type of fishing to which the Secretary's judgment must be applied.

Obviously the limitation was not intended to guarantee unlimited trap fishing. Yet that is the logical result of appellant's view that if some are allowed to fish with traps he must be permitted to do so also, if necessary by the opening of new sites or areas. If this is true as to appellant it is true as to all other citizens. In other words, the number of traps could be limited only by the number of applicants and of available sites, not by the Secretary's judgment concerning the number appropriate for proper conservation. Such a construction would defeat the primary purpose of the Act.[13] In the absence of any other standard, the Secretary's judgment concerning the number of traps consistent with right conservation must be accepted as conclusive. The regulations must be taken as establishing his judgment in this respect. Equality of opportunity cannot mean, therefore, a right in any citizen to have him open sites or areas which he has determined should be closed.

Its only other feasible meaning would be an equal or fair opportunity for appellant to share in the sites which have been allocated. But appellant has not

sought these sites and makes no claim that he has been denied them. Furthermore, equality of opportunity in this sense hardly could mean that appellant or any other citizen has an absolute right to have one or more of these sites allotted to him. Obviously when the number of applicants exceeds the number of available sites as determined by the Secretary, some applicants must be excluded. This is an inherent limitation imposed by the immobile nature of trap fishing. The trap's fixed location requires that its site and some surrounding area be allotted exclusively to some applicant, unless it is to have no value at all. Such exclusive occupancy cannot constitute a monopoly in the statutory sense. As applied to trap fishing, therefore, equality of opportunity does not mean that if one citizen is allowed to fish all others must be permitted to do so. We think it is satisfied, in this application, if within the number of sites which the Secretary finds is consistent with proper conservation, they should be allotted in order of priority of time in application among qualified applicants. Appellant is qualified, but he is late. The existing allocations have been made to applicants whose applications long antedate that of appellant. Taking account of this fact and the further one that appellant has not applied for and does not complain because he has not been allotted any of these sites, we see no basis upon which he can be given relief whether affirmative or purely negative in character.

It may be that the Secretary has weighted priority of time too heavily and on this principle has allotted or renewed sites without due regard to their concentration in the hands of a few who have been forehanded in applying for them or securing assignments from those who have done so. But the presumption is to the contrary and if, as appellant alleges, too great a concentration exists, that is a matter certainly for the Secretary's attention when renewals or further allocations are made, perhaps on reconsideration of those which have been made. Possibly

[12] Cf. Massachusetts v. Mellon, 1923, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078; Fairchild v. Hughes, 1922, 258 U.S. 126, 42 S.Ct. 274, 66 L.Ed. 499; Perkins v. Lukens Steel Co., 1940, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108; Tennessee Power Co. v. Tennessee Valley Authority, 1939, 306 U.S. 118, 59 S. Ct. 366, 83 L.Ed. 543; Alabama Power Co. v. Ickes, 1938, 302 U.S. 464, 58 S. Ct. 300, 82 L.Ed. 374.

[13] Furthermore, it would not necessarily eliminate the alleged discrimination of which appellant complains, since if there should be more applicants than available sites, some would have to be excluded.

also, though we do not decide the question, it would be one for judicial relief at the suit of a proper party and on sufficient showing that the concentration has been adopted as a permanent policy and not merely as an incident of transition from one policy to another within the scope of the Secretary's discretion.[14] But, as has been said, appellant has not applied for any of the sites now approved and does not allege that they have been denied to him or complain merely because they have been allotted to others. He seeks rather to use these allotments as a foundation for requiring that similar ones be made to himself. That he is not entitled to do. Except for this, therefore, his complaint of monopoly reduces itself to that of a citizen who, without special right or interest which is infringed, seeks general enforcement of the legal prohibition against monopoly. In this view appellant is no more entitled to negative than he is to affirmative relief. The allegations of the complaint are not sufficient to show that he has been deprived of the equality of opportunity which the statute guarantees.

Since we think appellant has not shown himself entitled to relief as against the Secretary of the Interior, it is clear that he is entitled to none as against the Secretary of War. It is unnecessary therefore to consider the latter's separate and independent contentions. Whether, if a case were made for relief as against the Secretary of the Interior, it would follow that it should be granted also as to the Secretary of War, we need not determine.

The orders of dismissal are affirmed.

---

[14] It appears from the record that the Secretary recently has reduced by twenty the number of approved trap sites. Appellant argues that the effect of this was merely to increase the monopolistic concentration, since the sites eliminated were not held by the allegedly favored corporations. But he alleges no facts to show that the Secretary's selection was arbitrary and not made in the interest of conservation. It cannot be assumed that this was true, the presumption being rather to the contrary. It is entirely possible, too, that the eliminations may have been made pursuant to a general policy of gradually reducing the number of trap sites with a view either to eliminating them or keeping open only a smaller number which the Secretary regards as the maximum consistent with effective conservation.