VARSITY SPORTSWEAR, INC., Plaintiff, *v.* PRINCESS FABRICS Co., INC., and JULIUS ROSENTHAL, INC., Named as Party Defendant in Counterclaim of PRINCESS FABRICS Co., INC., Pursuant to Section 271 of the Civil Practice Act, Defendants.

Supreme Court, Special Term, New York County, March 29, 1940.

*Shlivek & Brin* [*Max Shlivek* of counsel], for the plaintiff.

*I. Gainsberg* [*Samuel Gottlieb* of counsel], for the defendant Princess Fabrics Co., Inc.

WALTER, J. The three corporations which are parties to this action here seek to enjoin each other and also obtain a declaration of their rights respecting the advertisement and sale of certain specially designed fabrics for women's dresses, and some other accessories. They are here referred to as Varsity and Rosenthal and Princess, respectively. Princess and Rosenthal may be described, with accuracy sufficient for present purposes, as manufacturers of dress fabrics. Varsity is a manufacturer of dresses from dress fabrics.

At least as early as the beginning of November, 1939, Princess started preparations for the manufacture of dress fabrics, the distinctive design of which was the printing in of certain marks or symbols or designs commonly used by and associated in the public mind with certain nationally known concerns engaged in the production and sale of various articles and products other than dress fabrics, such as: The girl and stick associated with Dutch Cleanser; the cup and saucer associated with Maxwell House Coffee; the camel or dromedary associated with Camel Cigarettes; the three interlocking rings associated with Ballentine's Beer; the Indian head associated with Pontiac Motor Cars, and many others.

Princess obtained the consents of the owners and users of such marks or symbols or designs to such use thereof by Princess, and from the terms of consents and the circumstances under which they were obtained and the actions of the parties thereunder, I find that as a part of the agreement evidencing such consent Princess at least impliedly agreed that in connection with its fabrics it

would advertise the fact that the designs thereof were taken from or were representations of the marks or designs or symbols of the owners and users who gave such consent.

The consideration for such consents, or perhaps, more accurately, the motivating reason therefor, was that thereby the products of the owners and users of such marks, symbols and designs would be advertised. In some instances the consents state that such right to use such marks and symbols and designs upon dress fabrics is given to Princess exclusively. In other instances the word " exclusively " is not used. In my view that makes no difference. A trade-mark cannot be used without the consent of the owner, and when the owner gives consent to one person such consent necessarily is exclusive, unless and until a similar consent is given to another, or unless and until the property in the mark is lost in some manner legally recognized.

Sample dresses made from such fabrics were in the hands of prospective customers in December, 1939, and at least as early as January 9, 1940, Princess began to advertise its fabrics under the general title " American Symbol Prints," and it thereafter sold large quantities of them to many retailers throughout a large part of the United States, some of whom likewise advertised them under that title, and with additional descriptive matter identifying the fabrics as containing as their distinctive design the marks or symbols or designs of such nationally known concerns, some of which were mentioned by name. Sometimes, too, the containers or .products to which the trade-marks relate were exhibited along with the dresses and the fabrics.

The manufacture of dress fabrics, having as their distinctive design the marks or symbols or designs of nationally known manufacturers of products other than dress fabrics, was also made the subject of fashion notes, advertising notes, and other news items or " write-ups," as distinguished from paid advertisements, in various papers and magazines. One of these appeared in *Life* magazine in its issue of February 19, 1940, which I think we may assume was on the newsstands at least a few days before that date. Another, fairly typical, exhibits a popular stage and screen singer attired in a dress made of a fabric which has a cup and saucer as its distinctive design, and identifies that design as the mark or symbol commonly associated with Maxwell House Coffee. Many of these advertisements and notes and " write-ups " identify Princess by name, and although some do not, I find that the result of all the various work and publicity and actual manufacture and exhibitions to prospective customers is that by January 10, 1940, dress fabrics of such designs, and also the phrase or title " American

Symbol Prints," had become identified in the mind of the trade with dress fabrics sold by Princess and the fabrics themselves had become identified in the mind of the trade as "American Symbol Prints." By January 26, 1940, such identification had become even more complete, and by February 18, 1940, it had become very widespread in the trade and had extended to ultimate consumers, the buyers of dresses themselves, having been then prominently displayed in the show windows of R. H. Macy & Co.

The wholesale price of dresses made from such fabrics was about eight dollars and seventy-five cents per dress, and the retail price was about fifteen dollars per dress.

I now turn to the facts respecting Varsity and Rosenthal. Witnesses called in their behalf have testified that about January 10, 1940, which is one day after the advertisement of Princess (Defendant's Exhibit A) appeared in the daily trade journal, *Women's Wear*, the stylist of Rosenthal submitted to others of that concern certain sketches which have not been produced but which are described by them as trade-mark prints, and that such sketches were submitted to Varsity about January 15, 1940.

Late in the day of January 26, 1940, after the usual hours, which is the day on which the advertisement of "American Symbol Prints" appeared in *Retail Merchandise Service* (Defendant's Exhibit B), Varsity ordered from Rosenthal certain dress fabrics which have as their distinctive design a girl with a stick, three interlocking rings, a camel, and a cup and saucer. The order designates the goods ordered as Ballantine, Maxwell, Old Dutch, Dromedary and Goodrich patterns.

Rosenthal then ordered the printing of such fabrics on January 27, 1940. It also appears that by agreement between Rosenthal and Varsity, Rosenthal was to sell fabrics of such designs to Varsity exclusively.

The fabrics so ordered on January 26, 1940, were delivered to Varsity on February 3, 1940, and Varsity made them into dresses and on February 6, 1940, sold a substantial quantity — said to be way under a thousand — to a retail store in the Bronx, called Alexander's, for one dollar and twenty-five cents each, net, and Alexander's advertised them on February 18, 1940. Varsity also made other sales to retailers who likewise advertised them.

The advertisements of the retailers to whom Varsity sold dresses describe them as "trade-mark prints," and use descriptive language plainly designed and calculated to lead the public to believe that such retailers are selling "American Symbol Prints" at a lower price. One published February 23, 1940, in fact actually states that the dresses advertised are copies of the more expensive originals

advertised in *Life* magazine. (Defendant's Exhibit F. See, also, Plaintiff's Exhibit 8.)

Varsity maintains that when it ordered the dress fabrics from Rosenthal on January 26, 1940, it never had heard of Princess or of its dress fabrics of the distinctive designs I have described. Rosenthal also maintains that it had no knowledge of the " American Symbol Prints " of Princess until the publication of the February 19, 1940, issue of *Life* magazine, or at least until the slightly prior exhibit of Macy's, which admittedly was an elaborate and beautiful display of dresses made from the fabrics of Princess; and a rather detailed circumstantial account is given of how Rosenthal's stylist developed its fabrics.

Upon all the evidence, however, it is difficult for me to believe that the fabrics of Rosenthal and Varsity, with which we are here concerned, were devised without knowledge of what Princess was doing; and I think it is a fair inference, and I here find that their fabrics were either copied from the fabrics of Princess, or that advance knowledge of the intention of Princess to put out its fabrics was obtained in some surreptitious manner, and that the purpose and intent of Rosenthal and Varsity was to take advantage of the publicity given to " American Symbol Prints."

Varsity and Rosenthal maintain that the idea of using trade-marks as a design for a fabric is not new and was not originated by Princess, but there certainly is no evidence that any one ever before actually exploited and developed and put into practice the idea of using actual trade-marks owned and used in connection with other products with the knowledge and consent of the makers of such other products and as a means of advertising such other products by having them brought to the attention of the public in connection with dress fabrics. The ideas and conceptions embodied in the so-called " Ad Girl Dresses " exhibited in plaintiff's Exhibits 11, 12, 13 and 14, are totally different from the " American Symbol Prints " developed and exploited by Princess.

Upon these facts the question of unfair competition is presented in a somewhat unique form. If the case presented simply a copying of design, I think no injunction in favor of either party could issue, for the law seems to be well settled that in the absence of a copyright or patent there is no protection against what has come to be known as " style piracy." Whether or not the law should afford protection in such cases is not for me to consider. There are weighty considerations on both sides. (See *Millinery Creators' Guild, Inc.*, v. *Federal Trade Commission*, 109 F. [2d] 175, and compare the position there taken with *Wolfenstein* v. *Fashion Originators Guild*, 244 App. Div. 656.)

The situation in the case at bar is not that Rosenthal and Varsity have copied a design originated by Princess, but that they are using the marks and symbols and designs of the manufacturers of products other than dress fabrics without permission from those manufacturers, and are doing it in such a way as to lead the public to believe that their products are the products of Princess, which has such permission, and in such a way as to trade unfairly upon the phrase " American Symbol Prints," by using the imitative phrase " Trade-Mark Prints."

Of significance in this connection is the advertisement of Alexander's (Defendant's Exhibit D). It is difficult for one to believe that it was mere coincidence that in the same advertisement in which " Trade Mark Print Dresses " were advertised, there was prominent reference also to the style of dress long known as Princess style. The close proximity leads me to believe that bringing " Princess " into that same advertisement was designed to create the impression of a reference to defendant Princess rather than to the style of dress long known as Princess.

Under such circumstances I think the right to an injunction is clear. There appears to be no case squarely and precisely in point upon its facts, but the cases that are analogous in principle are numerous, and as the briefs submitted to me show that counsel are familiar with them, and will have them available to any appellate court, I do not think it necessary for me to cite them here. I will say, however, that in the note in 47 Harvard Law Review, beginning at page 1419, to which counsel for Varsity and Rosenthal have called my attention, there are, at pages 1424 and 1427, both cases and assertions which I think strongly support the position of Princess.

Varsity and Rosenthal argue that a trade-mark is a mere incident of a business and cannot be assigned except as incidental to an assignment of a business. That, I think, is a correct statement of the law. I go further and say that it cannot exist except as appurtenant to a business, and I applied that principle only the other day in the case of *Golenpaul* v. *Rosett* (174 Misc. 114). But I do not think it has any application to the case at bar.

The owners of the marks, symbols and designs which Princess is using upon its dress fabrics did not surrender their own right to use those marks, symbols and designs. Neither did they assign to Princess any right to use them as trade-marks of Princess, as was the situation in the Security tire case (*Buffalo Rubber Mfg. Co.* v. *Batavia Rubber Co.*, 90 Misc. 418), upon which counsel for Rosenthal laid so much stress. The owners merely said, in effect, that Princess might advertise their products in a specified way.

As used by Princess upon its dress fabrics, the marks still indicate the products of the owners of the marks just as much as if they were imprinted upon the paper of a magazine or newspaper instead of a piece of cloth which is made into a dress, and that is emphasized and made clear by the fact that in many instances such products were used in connection with displays of the dresses. For example, upon one occasion Maxwell House Coffee and Pineapple Juice were not only displayed but actually served in connection with displays of dresses made from fabrics containing the designs associated with that coffee and a particular brand of pineapple juice.

Of course, the object of Princess was to popularize its specially designed fabrics to the end that more dresses would be sold and in turn more of its fabrics would be bought, but that is not essentially different from a magazine increasing its sales by having interesting advertisements within its covers. I strongly suspect that some magazines, even of the so-called general type, are bought for their advertisements rather than for their reading matter, and certainly in magazines devoted to special fields, like architecture and building, the advertisements actually make the magazine. The advertisers in such magazines certainly do not assign the trade-marks there displayed to the publishers of the magazine, and neither do they make them public property.

The contentions of Varsity and Rosenthal come down, in ultimate analysis, to an assertion that all the concerns which consented that Princess might use their marks in fabric designs have lost all property rights in their marks, and made them public property, and that I refuse to hold. There clearly has been no loss of distinctiveness through acquiescence. (See Derenberg, Trade-Mark Protection and Unfair Trading, pp. 611–615.)

On the contrary, the very fact that in extreme cases trade-marks may be lost through acquiescence in their use by others leads me to believe that even the maker of an automobile, for example, would be entitled to enjoin the use of his mark upon dress fabrics if he thought such use injurious to him, and that, therefore, the contract relationship existing between Princess and the owners of the several marks and symbols and designs who have consented to their use by Princess gives Princess a standing to enjoin an unauthorized use thereof by Varsity and Rosenthal. Acquiescence by Princess in such use might subject it to liability to such owners for damages, because in giving consent to Princess such owners certainly were not giving it to any one else, and it very well may be that Princess was under at least an implied obligation to prevent such use by others if it could.

My decision accordingly is that the complaint is dismissed and judgment is ordered upon the counterclaim in favor of Princess against Varsity and Rosenthal. That judgment will be for an injunction and an accounting unless counsel can agree upon the amount of profits or damages. The injunction provisions will, in general, follow the order heretofore made by Mr. Justice McLAUGHLIN. Counsel will agree upon the form of a judgment if they can. If not, it will be settled upon notice.