STAR BEDDING COMPANY,
Plaintiff,

v.

STIX, BAER & FULLER CO.,
Defendant,

and

The Englander Company, Inc.,
Intervener.

No. 3296(2).

United States District Court
E. D. Missouri, E. D.

June 17, 1955.

Lawrence C. Kingsland and Estill E. Ezell, St. Louis, Mo., for plaintiff.

Alfred W. Petchaft, St. Louis, Mo., for intervener.

**HULEN, District Judge.**

Plaintiff is in the business of manufacturing and selling feature pillows and feathers, in the general class of upholstery. As owner of two trade-marks (No. 128,528, issued January 6, 1920, and No. 130,416, issued April 29, 1920), comprising the word "star" and the symbol of a star, plaintiff initiated this action in 1945 against Stix, Baer & Fuller Company, for infringement of the mark in the sale of mattresses with a mark shown on the label. The Englander Company, Inc. manufactured the accused mattress and applied the mark complained of. They intervened. This initial suit was terminated in the year filed by a consent decree wherein ownership of the trade-mark in plaintiff was admitted, and likewise infringment. The intervener was permanently enjoined from infringing.

On December 10, 1954 plaintiff filed its petition for an order of contempt against intervener for violation of the injunction issued ten years earlier.

Answer on the order to show cause raises one issue—infringement.

Plaintiff's trade-mark is applied as a mark on labels attached to its product.

The accused mattress is not claimed to have a mark, as such, that infringes plaintiff's mark. The controversy arises from the intervener's use, in a prominent manner, of the symbol of a star as a part of the fabric covering of the mattress. The ticking is covered with clouds interspersed with stars. The clouds are dark gray. The stars are red, with black shadow effect. Intervener claims the use of stars is merely decorative, and does not and was not intended to indicate the source or origin of the mattress on which the fabric is used.

Plaintiff states their view on the present issue:

"Does the display of the stars as a part of the fabric of the mattress cover, instead of on a fabric label attached to the cover as involved in the original suit, violate the injunction? It is our contention that Englander's use of stars on its accused mat-

tresses is manifestly a use 'in the sale of mattresses' which is prohibited by the injunction."

Can plaintiff's broad interpretation of the injunctive decree be sustained? If it cannot, plaintiff's move for a contempt citation must fail.

■ I believe the correct rule to be that a decree should be read in its entirety to determine its import. National Surety Corporation v. Williams, 8 Cir., 110 F.2d 873. The terms of the decree, to be effective, must be within the issues made by the pleadings. Chouteau Trust Co. v. Massachusetts Bonding & Ins. Co., 8 Cir., 1 F.2d 136. As summarized in Terminal R. R. Ass'n v. United States, 266 U.S. 17, 45 S.Ct. 5, 8, 69 L.Ed. 150, the law is:

"In contempt proceedings for its enforcement, a decree will not be expanded by implication or intendment beyond the meaning of its terms when read in the light of the issues and the purpose for which the suit was brought; and the facts found must constitute a plain violation of the decree so read."

The original action charged trademark infringement by manufacture and sale of a mattress "under the designation and mark comprising the word 'star' and symbol of a star" and prayed that intervener be restrained—

"(a) from using in the sale of mattresses or similar goods the word STAR, or any representation or symbol of a star, or any other colorable imitation of plaintiff's trademark;

(b) from otherwise infringing plaintiff's registered trade-mark."

■ The pertinent portion of the injunctive consent decree in issue here restrains defendant from using "in the sale of mattresses or similar goods, the word STAR or any representation or symbol of a star, or any other colorable imitation of plaintiff's said trade-mark; and from otherwise infringing said trade-mark * * *."

Plaintiff's assumption of this issue somewhat circumscribes the decree as it must be read. True the decree does restrain using "in the sale of mattresses * * * any * * * symbol of a star * * *." We must further read that such use is conditioned that the use be a "colorable imitation" of plaintiff's mark, and infringement. That is the substance of the decree when read in the light of the pleadings and Trade-Mark Act.

■ The prime issue correctly stated then is—does the proof show the manner of use of the star symbol by intervener represents a violation of the Trade-Mark Act? If it does intervener is in contempt. We think plaintiff must carry the same qualitative burden of proof to show violation of the decree as it would have had to establish trade-mark infringement in the first instance. That was the issue when the suit was brought. That issue was settled by the consent decree. That is the issue on the citation for contempt. Plaintiff's protection went no further. It gave no more nor less than the Trade-Mark Act accords.

Title 15 U.S.C.A. § 1114 sets forth how a trade-mark is infringed.

■ Plaintiff made no effort to show that intervener's use of the star symbol is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of the mattress. Apparently plaintiff rests its case solely on the exhibit showing use of the star symbol by intervener. The president of plaintiff's company testified by deposition:

"Q. All right. Now have you ever had any complaint from a retail customer who purchased a mattress with the Dawn Gray ticking and thought it was a mattress made by you? A. No."

The vice-president of plaintiff company testified:

"Mr. Petchaft: Now, Mr. Steinhart, have you ever in your personal conduct of this affair or connection with this affair, have you ever had any indication that there was any confusion between the merchandise of the Englander Company and merchandise of your company? A. Confusion, what do you mean by that?

"Q. Well, has any customer ever thought that Englander merchandise was made by your company instead of by Englander? A. No.

"Q. Have you had any indication from any retail store, buyers, jobbers or people of that sort that merchandise manufactured by the Englander Company bearing this Dawn Gray ticking which is accused here was being taken for your merchandise? A. Well, no, I haven't had anything like that. I don't know of any incident."

The original litigation concerned intervener's use on its label of star symbols, the figure "8" and word "Star." That label was originated by intervener. On this contempt citation the accused article is not a label originated by intervener but the covering or ticking on a mattress which intervener procured on the open market. The record shows fabrics containing the star symbol are numerous, to say the least. The ticking in question was originated and manufactured unsolicited and unknown to intervener by Golding Bros. Golding Bros., with whom intervener has no connection, is a manufacturer of fabrics. They manufactured the accused fabric in the usual course of their business and put the designation on it of "Dawn Gray," and offered it to the trade in the usual course. Intervener is a customer of long standing of Golding Bros. Intervener purchased a quantity of the "Gray Dawn" ticking and, along with other designs of ticking, used it in the manufacture of mattresses in 1954. How many more manufacturers used the same design of ticking is not of record. Intervener put a label on its mattress that is not complained of. If there is any infringement it must be found solely in the ticking.

It is my conclusion that plaintiff has failed to carry its burden of proof to sustain its charge that the court's decree

has been violated by intervener. On this bare record I cannot find that use of the star symbol in the fabric is a "colorable imitation" of plaintiff's mark. Nor is there evidence that use of the star symbol "is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods * * *." As I view the accused fabric the subject is a natural one for a mattress covering. The use of clouds and stars together suggests nature's arrangement rather than a trade-mark. The stars in profusion suggest a gaudy feature rather than an attempt to call attention to plaintiff as the source of the product. I do not think it can reasonably be presumed that the accused fabric would suggest plaintiff as the source of the product. There is no evidence anyone ever was misled. For a case on claimed infringement by use of a star symbol see Hutchinson, Pierce & Co. v. Loewy, 2 Cir., 163 F. 42.

When plaintiff's position is carried to a conclusion its effect is a strong suggestion of using a trade-mark for purposes that can only be availed of by a design patent only. Title 35 U.S.C.A. § 171. When we enter that field it is apparent an application for a design patent on the star symbol would run into difficulties. Tests for a design patent are the same as for a mechanical patent. There is little invention in the star symbol standing alone. Plaintiff's case must stand solely on trade-mark. Absent statutory protection plaintiff has no right in the premises.

This is not to say that a trade-mark cannot be infringed by its use in decorating a fabric. Such a case is the bold application of trade-marks which is the basis of the ruling in Varsity Sportswear, Inc., v. Princess Fabrics Co., Inc., 174 Misc. 298, 19 N.Y.S.2d 723. It is to be noted that plaintiff did not there prosecute on trade-mark violation, but on unfair competition. Such is not the issue here.

Let order be settled and submitted in five days.